No. 14,259.

BRAY *v.* THE PEOPLE.

(78 P. [2d] 366)

Decided April 11, 1938.

Mr. HOWARD ROEPNACK, for plaintiff in error.

Mr. BYRON G. ROGERS, Attorney General, Mr. HENRY E. LUTZ, Assistant, for the people.

*En Banc.*

Mr. Chief Justice Burke delivered the opinion of the court.

Plaintiff in error is hereinafter referred to as defendant and her deceased husband as Bray. On a verdict of guilty of murder in the second degree she was sentenced to the penitentiary for a term of ten to twelve years. To review that judgment she prosecutes this writ. The assignments of error raise three questions which we find it necessary to consider: (1) The sufficiency of the evidence; (2) the exclusion of evidence; (3) the conduct of the prosecuting attorney.

1. Defendant, 50 years of age at the time of the trial, had been married three times. Her second husband died in August, 1935. She met Bray, a railway brakeman, in October, following, married him two months later, and killed him August 25, 1936. Their brief married life was worse than unhappy. Bray was drunken, quarrelsome, and negligent. Defendant was experiencing her change of life with the usual nervousness, vacillation, and uncertain moods common to that period. Bray was frequently in the society of a neighbor woman and defendant was suspicious and fiercely jealous. He got possession of some of her property and tried to get more. Neighbors made their customary contribution by feeding the fires of discord with gossip and tattling. Some physical conflicts occurred. Bray's language was habitually vile. Defendant filed suit for divorce in May and obtained a court order forbidding her husband the premises, which she owned and where they lived. In June they were reconciled. For two or three days prior to the killing Bray was from home, defendant believed with the woman above mentioned. He returned about 5:30 P. M., whereupon quarreling began and continued intermittently until past midnight. Bray put a pistol in his trousers pocket, placed the garment under the bed, and went to sleep. Defendant arose, abstracted the gun, and placed it in a china closet in the dining room some

twelve feet distant. Most of the foregoing is from her testimony. She further says that when she called her husband for breakfast he struck her on the side of the head with a shoe and ordered her out. She went to the dining room, got the pistol and returned to the bedroom. He was sitting on the side of the bed within four feet of her. She was angry and intended to make him leave the house, but did not intend to kill him. She said, "You just beat me up enough." "You stop cussing me." "You will deceive me?" "I wouldn't have got so mad only he kept acting like he wanted everything." "He started to get up and I just shot him." "I just shot at him sitting on the side of the bed." He "just rolled over and laid down on the bed." Thereupon defendant left the house, sought the sheriff, and surrendered. Bray was found lying in the center of the bed, covered with the bed clothing, with his head between the bloody pillows. There was no blood on the bed clothes at the foot of the bed, but on the outside of the foot panel was a streak about eight inches long. The bullet entered the front of Bray's head, three inches from the top of the eyebrow and three inches from the top of the ear. In its passage through the head it split, one piece going through the brain. Death was due to shock and hemorrhage. There were no powder marks. A physician testified that "the bullet passed through the motor area in the brain and tore out a goodly portion of the motor area," and that in his opinion deceased could not have moved after the shot.

No further abstract of evidence is necessary. In certain particulars there is conflicting testimony, but the record contains nothing which deprived the jury of the right to believe and give full force to the foregoing. Much of it is corroborated by circumstances and some of it emphasized. For instance, sufficient facts are disclosed by some of the witnesses to entitle the jury to believe that defendant was not struck with the shoe as she testified. The arguments and inferences advanced

by counsel in mitigation or explanation are ingenious and forceful, but they were arguments for the jury, not for us. The jurors and the trial judge declined to accept them and their conclusions must stand. So standing it is clear that this evidence would have supported a verdict of first degree murder. If so its sufficiency to support a verdict of second degree murder can not be questioned. Conduct which would sustain a finding of deliberation and premeditation must perforce sustain a finding of malice. Twenty instructions given are set forth in the abstract but no objections to any of these appear, nor does the abstract disclose any requests refused.

2. An objection was sustained to a question propounded defendant's daughter-in-law calculated to reveal defendant's mental state concerning her home life several months preceding the shooting. The ruling was followed by no sufficient offer of proof. Thus remote and indefinite it was clearly immaterial. The same witness was asked concerning statements made by deceased as to his purpose in living with defendant and an objection thereto was sustained. The same ruling applies.

3. It is said in the motion for a new trial that the district attorney, in his closing argument to the jury, misquoted testimony, and stated that many persons, then in the court room, had come to him and insisted on testifying against defendant. This is supported by the affidavit of defendant wherein it is admitted that an objection made thereto was sustained by the court. The same allegations and admissions, in the same language, appear in affidavits by counsel for defendant. These are indefinite and unsatisfactory. Neither argument, objections, nor ruling, are otherwise presented. What caution, if any, the court gave when the objection was sustained does not appear. Nor is it alleged that none was given. Such being the record, and all presumptions being in favor of the judgment, we must assume that the error, if any, was cured.

Careful perusal of this entire record leaves the very definite impression that defendant committed a first degree murder, which the jurors, moved by her sex and state of health and the callous conduct of deceased, and preferring to err on the side of mercy, returned as second degree. We find no question of law presented which can even be said to be close and no error disclosed which can possibly be said to be reversible.

The judgment is affirmed.