No. 25816

**The People of the State of Colorado v.
Arlon Wayne Lankford**
(524 P.2d 1382)

Decided July 29, 1974.

John P. Moore, Attorney General, John E. Bush, Deputy, Aurel M. Kelly, First Assistant, for plaintiff-appellee.

Rollie R. Rogers, State Public Defender, James F. Dumas, Jr., Chief Deputy, Lee Belstock, Deputy, for defendant-appellant.

MR. JUSTICE KELLEY delivered the opinion of the Court.

The defendant, Arlon Wayne Lankford, was charged with first-degree murder, C.R.S. 1963, 40-2-3, and was convicted by a jury of second-degree murder. The offense occurred on May 7, 1972, and the victim of the killing was his wife, Gladys C. Lankford.

The defendant asserts four grounds for reversal of his conviction of murder in the second degree. First, he asserts that there was insufficient evidence to support the conviction; second, that the jury should have been instructed on self-defense; third, that the trial court should have admitted evidence of a previous knifing offense committed by the People's only witness to the murder; and fourth, that a mistrial should have been granted because of the district attorney's characterization of the murder weapon as a "Saturday-night special." We affirm.

A brief summary of the evidence will suffice to place the defendant's argument in proper perspective in reference to his first assignment of error.

There is no substantial disagreement as to what transpired up to the time immediately prior to the killing. The defendant, sometime after work, joined his wife and a mutual friend, one Villegas, in the Lankfords' mobile home for a few beers. It was then decided to go into nearby Burlington, Colorado. The three of them spent the evening in town visiting various taverns, drinking more beer and finally leaving to return to the Lankford home. On the return trip, as the result of some disagreement between the Lankfords, the

defendant ordered his wife to get out of the pick-up truck. After proceeding along the road a short distance further, Villegas induced the defendant to return for his wife. In the course of conversation, Lankford told Villegas that if his wife was still in the road he would run over her. However, she was lying in the field adjacent to the road. Villegas picked her up and brought her back to the pick-up. They then proceeded to the Lankford home.

The defendant entered the house first and when Mrs. Lankford and Villegas came in the defendant had a gun in his hand. At this point the People's evidence as articulated by Villegas and the testimony of the defendant differ in several material aspects.

The defendant states that he asked Villegas to leave; that Villegas stuffed his hand in his pocket; and that defendant pointed the pistol at him. At this juncture Villegas grabbed the pistol, and in the struggle which followed, the pistol discharged, accidentally killing Mrs. Lankford.

Villegas, on the other hand, testified that, upon being confronted with the gun, he asked Lankford what he was going to do with the gun, and the defendant said, "I'm going to kill this bitch." Defendant then shot her in the chest.

## I.

In defendant's first assignment he contends that there was insufficient evidence to support his conviction of second-degree murder. The essence of the argument is that under the evidence presented to the jury, there were only two verdicts it could return: first-degree murder or involuntary manslaughter. Defendant maintains that if the jury had believed the People's evidence it would have had to return a verdict of first-degree murder. On the other hand, if the jury believed the testimony of the defendant, it could find him guilty only of involuntary manslaughter.

The rationale of defendant's argument is that in finding the defendant guilty of second-degree murder, the jury necessarily rejected Villegas' testimony and the only evidence remaining, that of the defendant, would support only an involuntary manslaughter verdict.

■■ The People respond to this argument by contending that when the evidence is viewed in its most favorable light, it was sufficient to sustain a verdict of first-degree murder, and that evidence which would sustain a verdict of first-degree murder must perforce sustain a finding of second-degree murder. We agree.

■■ We have consistently held that the evidence must be viewed in the light most favorable to the jury's verdict and that the jury is presumed to have adopted that evidence which supports its verdict. *People v. Vigil,* 180 Colo. 104, 502 P.2d 418 (1972); *Dodge v. People,* 168 Colo. 531, 452 P.2d 759 (1969) and cases cited therein.

The defendant in this court concedes that the evidence of the People, if believed by the jury, was sufficient to support a conviction for first-degree murder. This means that the killing was willful, deliberate and premeditated with malice afore-thought. However, we note that counsel for the defendant, at the close of the People's evidence, moved for a judgment of acquittal on the charge of first-degree murder, and at the same time suggesting "that the case proceed on second-degree murder or any lesser included offenses."

■■ Second-degree murder does not require proof of premeditation, but it does require proof of malice, which, by statute, is defined as "that deliberate intention to take away the life of a fellow creature." Under our system of justice, assuming the sufficiency of the evidence to support first-degree murder, it is strictly within the province of the jury to evaluate the evidence and say by its verdict whether the evidence justifies a verdict of first or second-degree murder. *See Bray v. People,* 102 Colo. 199, 78 P.2d 366 (1938); *Murphy v. People,* 9 Colo. 435, 13 P. 528 (1886). It is illogical to say that the evidence is sufficient to support a conviction of first-degree murder but insufficient to support the lesser included offense of second-degree murder.

## II.

■■ Defendant's second assignment of error, raised for the first time on appeal, is the failure of the court to instruct the jury on the issue of self-defense. We note that the record

discloses that the defendant did not tender nor request the giving of such an instruction, nor did he assign the court's failure to give the instruction as a ground for new trial. We also note that there is no evidence to support the giving of such an instruction. For all these reasons the assertion of error at this stage in the proceedings is not well taken. *People v. Bowen,* 182 Colo. 294, 512 P.2d 1157 (1973); *Lamb v. People,* 181 Colo. 446, 509 P.2d 1267 (1973); *People v. Montague,* 181 Colo. 143, 508 P.2d 388 (1973); *Payne v. People,* 110 Colo. 236, 132 P.2d 441 (1942).

Further on this point, it appears that in the course of an argument in reference to the permissible scope of cross-examination of the defendant, Mr. Klein, one of the defendant's trial counsel, stated:

"This is not a matter—I don't think there is any indication of *self defense* here concerning the woman in the matter. I think this alleged prior behavior, if there is any alleged assault or anything like that, don't have anything to do concerning his wife because there is no — he's not opening the door and claiming *self defense* against his wife that night and that is what you're talking about, prior threats and difficulties . . . ." (Emphasis added.)

■ The defendant cannot try the case on one theory and claim error on appeal where the trial court, in instructing the jury, acquiesced in that theory.

### III.

■ The defendant's third ground for reversal is based on the trial court's refusal to allow defense counsel to question Sheriff Hubbard regarding a prior knifing incident involving Villegas.

This issue arose in this context. The defendant made the sheriff his witness. Mr. Kirkwood, one of defendant's trial counsel, asked this question:

"Q. Sheriff, at any time prior to the 7th day of May, 1972, did you ever have occasion to arrest Francisco Villegas for a knifing incident?"

The district attorney objected. An in camera hearing ensued. Defense counsel advised the court that the answer

would show that Villegas had been arrested and charged with "assault with a deadly weapon and or something like that." However, the record shows that Sheriff Hubbard's predecessor had actually made the arrest. The district attorney pointed out that there had been no foundation laid for impeachment.

Counsel for defendant conceded this and then stated that he was offering the testimony to show Villegas' reputation in the community as 'a knife wielder.' The district attorney again pointed out that no foundation had been laid and that the question was improper. This is true. The defendant made no further effort to develop this line of testimony. *See People v. Burress,* 183 Colo. 146, 515 P.2d 460 (1973).

## IV.

Defendant finally asserts that it was error for the trial court to deny his motion for a mistrial after the district attorney characterized the murder weapon as a "Saturday-night special." This developed in the course of the cross-examination of the defendant relative to why he had the gun and what he used it for.

The attorney general does not contend that the characterization of the murder weapon as a "Saturday-night special" was proper, but contends that the single reference to the weapon was not so prejudicial to the defendant as to require a mistrial. We agree.

The granting or denial of a motion for mistrial lies within the sound discretion of the trial court, and its ruling will not be disturbed on appeal in the absence of a clear showing of abuse of its discretion. *Fresquez v. People,* 178 Colo. 220, 497 P.2d 1246 (1972), and cases cited therein.

The trial judge is in a superior position to ours to judge the effect a characterization such as the foregoing might have on the jury. It should also be noted that the judge immediately cautioned the jury to ignore the remark and to put it completely out of mind. It seems clear that the court ruled correctly under the circumstances.

The judgment is affirmed.

MR. JUSTICE ERICKSON does not participate.