580 P.2d 1263 (1978)
The PEOPLE of the State of Colorado, Plaintiff-Appellee,
v.
Jack ALONZI, Defendant-Appellant.
No. 77-356.
Colorado Court of Appeals, Div. I.
March 30, 1978.
Rehearing Denied April 20, 1978.
Certiorari Granted July 10, 1978.
*1265 J. D. MacFarlane, Atty. Gen., David W. Robbins, Deputy Atty. Gen., Edward G. Donovan, Sol. Gen., Robert C. Lehnert, Asst. Atty. Gen., App. Section, Denver, for plantiff-appellee.
Walter L. Gerash, P. C., Walter L. Gerash, Jeffrey A. Springer, Denver, for defendant-appellant.
RULAND, Judge.
The defendant, Jack Alonzi, appeals his conviction by a jury of felony theft and of conspiracy to commit that theft. We affirm.
The People's evidence reflects that Alonzi was contacted by an undercover agent on September 15, 1975, for the purpose of arranging a purchase of stolen vehicles. Over the next few days they had numerous telephone conversations which, with the exception of the first call, the agent tape recorded. There were also several personal meetings between the two men. During the course of these conversations Alonzi indicated that he would secure at least two stolen Continental Mark IV's for the agent to purchase for $2,500 apiece. At Alonzi's direction, the agent met him at a Denver motel on the evening of September 19. About 1:00 a. m. two stolen Lincoln Continentals were driven into the parking lot. At that point Alonzi stated, "Here comes my guy." The agent then paid Alonzi $5,000 for the cars, whereupon Alonzi was arrested.
At trial another witness, who was granted immunity from prosecution, testified that he had been approached by Alonzi and, at Alonzi's urging, had arranged for and participated in the theft. Alonzi did not, however, pick out the Mark IV's which were stolen or instruct the witness on how to steal them.
Alonzi first asserts that the evidence demonstrated only that he had "encouraged" the crime. He argues that such conduct is insufficient to establish that he aided, abetted, or advised the other participants in planning or committing the theft and that, therefore, the evidence was insufficient to support either his conviction as a principal under the complicity statute, § 18-1-603, C.R.S.1973, or his conviction for conspiracy. We find no merit in this contention.
Viewed in a light most favorable to the verdict, see People v. Lankford, 185 Colo. 445, 524 P.2d 1382 (1974), the evidence showed that Alonzi agreed to provide the agent with two stolen vehicles, secured the services of another man to steal the vehicles, made arrangements for delivery of and payment for the vehicles, and accepted $5,000 for the stolen vehicles upon their delivery. Assuming, arguendo, that the complicity statute is not applicable where one merely "encourages" commission of a crime, Alonzi's involvement establishes him as a central figure in this criminal activity. Thus, he was responsible as a principal. See People v. Lamirato, 180 Colo. 250, 504 P.2d 661 (1972). Similarly, this evidence also establishes an agreement between Alonzi and others to commit theft, and thus, it *1266 was sufficient to sustain the conspiracy conviction. See People v. Shannon, Colo., 539 P.2d 480 (1975).
Next, Alonzi contends that the trial court improperly admitted into evidence a tape recording which consisted of six telephone conversations, of which five were between Alonzi and the agent, and one between the agent and one of Alonzi's co-conspirators. Alonzi urges that admission of the tape recording constituted reversible error because it was so inaudible as to be unreliable, and because no proper foundation was laid. We disagree with both contentions.
Review of the tape recording does show that substantial portions of two of the conversations are inaudible. However, the prior and subsequent conversations are comprehensible, of good quality, and reliably demonstrate Alonzi's knowing participation in the thefts. Thus, the inaudible portions were not so substantial, in view of the purpose for which the tape recording was offered, as to render the recording untrustworthy. See People v. Odneal, Colo., 559 P.2d 230 (1977). Hence, the trial court did not abuse its discretion in admitting the tape recording into evidence. See People v. Quintana, Colo., 540 P.2d 1097 (1975); People v. Coca, Colo.App., 580 P.2d 1258 (announced March 9, 1978).
Relying upon such cases as Durns v. United States, 562 F.2d 542 (8th Cir. 1977) and United States v. McMillan, 508 F.2d 101 (8th Cir. 1974), Alonzi contends that, prior to introduction of the tape recording into evidence, it must appear that:
(1) the recording device was capable of taping the conversation offered into evidence;
(2) the operator was competent to operate the recording device;
(3) the tape recording was authentic and correct;
(4) there were no changes, additions, or deletions made in the tape recording;
(5) the tape recording was properly preserved;
(6) the speakers were identified; and
(7) the conversation elicited was made voluntarily and in good faith without any kind of inducement.
Alonzi asserts that the People's evidence demonstrated compliance with only the sixth and seventh requirements. Specifically, Alonzi argues that because the recording machine failed to record the first conversation which the agent attempted to tape, the record demonstrates a failure to comply with the first and second requirements. As to the third, fourth and fifth criteria, Alonzi argues that the People failed to show a chain of custody for the tape recording from the time the agent placed it in an evidence safe. Under these circumstances, Alonzi concludes that the trial court should not have admitted the tape recording.
Initially, we decline to adhere to the formalistic analysis urged by Alonzi in determining whether the tape recording was admissible. We conclude that because the criteria overlap, to apply them all simultaneously would lead to confusion. Further, we do not view formal "chain of custody" requirements as applicable. See United States v. Biggins, 551 F.2d 64 (5th Cir. 1977). Rather, we hold that because the speakers were identified and because Alonzi, in effect, concedes that the conversation was voluntary on his part, the scope of the trial court's inquiry prior to admission of the tape recording was properly limited to: (1) whether foundation evidence demonstrated that the tape recording was sufficiently audible under the test of People v. Odneal, supra; and (2) whether the tape recording was an accurate reproduction of the audible conversation. See Biggins, supra. For the reasons stated above, the tape recording was sufficiently audible.
We further conclude that the tape recording was sufficiently accurate to be admitted into evidence. We recognize that no tape recording of the initial conversation between the agent and Alonzi was available, either because it had been lost or because of some unexplained malfunction in the recording machine. However, this evidence fails to demonstrate that the recording device was incapable of making a tape *1267 recording because sixteen subsequent conversations were recorded. Further, the agent testified that the tape recording accurately reflected the other audible conversations. Under these circumstances, the trial court's ruling was correct. See People v. Quintana, supra.
Alonzi next contends that the agent intentionally destroyed material evidence which was potentially useful to him, and that the trial court erred in denying his motion for judgment of acquittal based thereon. We conclude that the trial court's ruling was correct.
During the course of the phone conversations the agent made various handwritten notes. Soon thereafter he used the notes to compile a formal report. The agent thereafter destroyed the notes pursuant to a standard operating procedure of the police agency. Because the recording machine failed to record the first telephone conversation with Alonzi and the agent's notes relative thereto were destroyed, the only information available pertaining to the initial conversation was the formal report and the agent's memory of that conversation.
We recognize that preliminary notes taken during the course of an interview or conversation might prove useful to a defendant. Conceivably, outright falsification might be revealed, and more frequently, discrepancies and unwarranted inferences later included in the formal report might appear. See United States v. Harris, 543 F.2d 1247 (9th Cir. 1976). See also Ortega v. People, 162 Colo. 358, 426 P.2d 180 (1967). However, under the circumstances of this case, we cannot agree with Alonzi that the focus of our analysis must be upon the "culpability of the agent who destroyed the notes." Rather, resolution of Alonzi's contention depends upon "the effect that the loss of the particular item of evidence has on the defendant's ability to defend against criminal charges." People v. Harmes, Colo.App., 560 P.2d 470 (1976); see Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
Here, with the exception of the first conversation, accurate recordings of the substance of the oral statements were available to verify the agent's version. See United States v. Harris, supra; People v. Norwood, Colo.App., 547 P.2d 273 (1975); Crim.P. 16 Part I(a). Further, the agent's recollection of the initial conversation was that a meeting was arranged with Alonzi, but few details of any transactions were discussed. Thus, there is no basis in the record before us from which we can conclude that the loss of the notes materially affected Alonzi's ability to present a defense to the charges. And, contrary to Alonzi's contention, we do not deem destruction of the written notes made during the taping of the one phone conversation as a violation of Crim.P. 16 Part I(a)(1)(II) when the substance of that conversation was set forth in the agent's formal report.
Alonzi contends that reversal of his conviction is required because of comments made by the prosecutor in his opening statement and in his closing arguments to the effect that Alonzi was part of an "auto theft ring." Alonzi's objection to those statements was overruled, and the trial court refused to grant his motion for mistrial. This contention also lacks merit.
We view the prosecuting attorney's remarks as fair comment upon the evidence presented at trial. See People v. Todd, Colo., 538 P.2d 433 (1975). In one conversation with the agent Alonzi indicated that he had just disposed of four Mark IV vehicles. In a conversation with a co-conspirator, the agent was informed that a source was available for "repapering the vehicles." In still another conversation Alonzi indicated that he could obtain up to twenty-four Mark IV's to be delivered to the agent at the rate of two each night.
We have considered the other contentions asserted by Alonzi on this appeal and find them to be without merit.
Judgment affirmed.
COYTE and STERNBERG, JJ., concur.