Christopher DILL, Petitioner,

v.

The PEOPLE of the State of
Colorado, Respondent.

No. 95SC363.

Supreme Court of Colorado,
En Banc.

Nov. 25, 1996.

Rehearing Denied Dec. 16, 1996.

David F. Vela, Colorado State Public Defender, Thomas M. Van Cleave, III, Deputy State Public Defender, Denver, for Petitioner.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, John Daniel Dailey, Deputy Attorney General, Robert Mark Russel, First Assistant Attorney General, Robert M. Petrusak, Senior Assistant Attorney General, Criminal Enforcement Section, Denver, for Respondent.

Justice LOHR delivered the Opinion of the Court.

The Colorado Court of Appeals affirmed the judgment of conviction of Christopher Dale Dill (defendant) entered on a jury verdict finding him guilty of sexual assault on a child by one in a position of trust.[1] *People v. Dill,* 904 P.2d 1367 (Colo.App.1995). We granted certiorari to determine whether the court of appeals was correct in holding that the trial court properly denied the defendant's motion for discovery of any notes and reports made by a psychologist during or resulting from meetings with the alleged victim (the child). *See Dill,* 904 P.2d at 1371.

1. § 18–3–405(1), (2)(b), 8B C.R.S. (1986).

We affirm the judgment of the court of appeals.

## I.

On March 6, 1992, the defendant was charged by information in Larimer County District Court with the class 3 felony of sexual assault on a child by one in a position of trust. *See* § 18–3–405(1),(2)(b), 8B C.R.S. (1986). The charge was based on an incident that occurred between June 1, 1988, and July 4, 1988.

At the time of the alleged assault, the child was six and one-half years old. She lived in Loveland with her mother, brother, and stepbrother. The defendant was staying with the family on weekends and was the biological father of the stepbrother.

The child testified at trial that the assault occurred late one weekend night when she went into the living room of the family apartment to lie on the couch. The defendant was in the living room. According to the child, the defendant laid down on the couch beside her and sexually assaulted her. The defendant then warned the child not to tell anyone or he might hurt her or her family. The child did not tell anyone about the assault at the time.

The child and her mother testified that the child first told her mother of the assault early in 1992 during a conversation precipitated by the child's attendance at a school assembly. The mother reported the matter to the Loveland Police Department and took the child for a medical examination, the results of which indicated that she had been subjected to sexual penetration some time in the past.

On January 18, 1992, the mother took the child to a child psychologist to evaluate the child's report of sexual abuse. The psychologist talked with the mother and child for about ninety minutes on that occasion to establish rapport with the child. At that meeting, the psychologist referred generally to the sexual assault allegations but did not ask the child for specific information. On January 24, 1992, the psychologist met with

the child alone for about ninety minutes. During that meeting, which the psychologist tape-recorded, the child made several statements describing the sexual assault by the defendant in 1988. On the basis of information obtained in those two meetings, the psychologist prepared a written report dated February 24, 1992. She delivered both the written report and the tape recording of the January 24 interview to the Loveland Police Department. Thereafter, the psychologist met with the child from time to time for therapeutic purposes.

Prior to trial, defense counsel filed a Motion to Disclose Identity of and Information from Professionals, which included a request for disclosure of any information resulting from the initial meeting and any later contacts of the child with the psychologist. The motion also sought disclosure of notes, reports, and statements of the child generated by contacts with any therapist, alleging that "[a]ny therapist who is currently seeing [the child] has information that is potentially exculpatory in the form of statements by the victim and in the form of suggestions and reinforcement that have been given to the victim in the course of therapy." Prior to a hearing on the motion, the prosecution provided the defense with a copy of the psychologist's February 24 report and a partial transcript of the tape of the January 24 interview. The prosecution did not provide any notes or other materials from the January 18 interview or from the therapy sessions.[2] The court heard argument on the motion, during which defense counsel contended that any privilege attaching to the child's statements to the psychologist had been waived or, in the alternative, that the materials should be reviewed *in camera* by the court to search for inconsistent statements or any other information to which the defense was constitutionally entitled. The court granted discovery of material from the January 24 interview, "which basically was to assist the Loveland PD," but denied discovery of material from further interviews "that appear to the Court to have been therapeu-

tic." The court made no specific mention of the January 18 interview.

On November 4, 1992, defense counsel moved to exclude the testimony of the psychologist, based in part upon alleged discovery violations. The defendant asserted that none of the psychologist's notes produced during the course of her ongoing therapeutic relationship with the child had been provided to the defense and that without such notes defense counsel could not fully cross-examine the psychologist, "especially on the issue of whether or not [the child] suffers from post-traumatic stress disorder." After hearing argument, in which defense counsel asserted the right to disclosure of all of the psychologist's notes concerning all meetings with the child, the court denied the motion without elaboration.

At trial, the psychologist testified to statements made by the child in the course of the January 24 interview concerning the sexual assault and expressed the opinion, as an expert in child psychology, that the child was experiencing post-traumatic stress disorder. In addition, the mother, the Loveland Police Department detective who interviewed the child, and the doctor who examined her testified to statements made to them by the child, describing the sexual assault. The child also testified to the assault. Although the child's out-of-court statements and her testimony at trial were consistent as to the location and circumstances of the assault and the identity of the assailant, the degree of detail concerning the assault varied among the different accounts.

The defendant testified on his own behalf and denied that he had ever assaulted the child. The defendant also presented evidence from a psychologist, qualified as an expert in the fields of mental health and sexual abuse, that he did not exhibit the majority of the characteristics accepted as traits usually demonstrated by sexual offenders, and friends offered testimony that commission of the offense was inconsistent with the defendant's character.

---

**2.** At some point, the prosecution also provided the defense with notes taken by the psychologist at her January 24 interview with the child. The

prosecution also observed at the hearing on the motion that the tape recording of the January 24 meeting was available to defense counsel.

At the conclusion of the trial, the jury found the defendant guilty as charged. The trial court entered judgment sentencing the defendant to ten years imprisonment. On appeal, the Colorado Court of Appeals affirmed the judgment of conviction. *Dill,* 904 P.2d at 1370, 1375. In doing so, the court rejected the defendant's argument that "the trial court erred in refusing to allow [the defendant] to examine the psychologist's notes and reports during her initial [January 18, 1992] and ongoing counseling sessions with the victim." *Id.* at 1371. The court noted that the defendant had received a copy of the psychologist's formal report and the notes used to prepare it and held that the child had not waived the psychologist-client privilege, § 13–90–107(1)(g), 6A C.R.S. (1987),[3] which protected communications between the child and the psychologist during ongoing therapeutic counseling sessions. The court of appeals also held that section 19–3–311(1), 8B C.R.S. (1996 Supp.), which abrogates the psychologist-client privilege as to communications between a victim and a psychologist that are the basis for a required report of child abuse under section 19–3–304, 8B C.R.S. (1996 Supp.), "does not concern communications relating to ongoing treatment of the victim." *Dill,* 904 P.2d at 1371. We granted certiorari to determine "[w]hether the trial court erred in refusing to allow discovery of [the psychologist's] notes and reports with respect to her meeting with the victim."

## II.

At the outset, it is important to identify the materials as to which the defendant asserts that he was erroneously denied access. The record is clear that the psychologist based her February 24, 1992, written report on both the initial January 18, 1992, interview and the January 24, 1992, interview. Well before trial, the defendant received the written report, as well as the psychologist's notes on the January 24 interview and a partial transcript of a tape recording of that

interview. The prosecution also offered the defendant access to the tape recording during a pretrial hearing.

The record is also clear that the psychologist did not prepare an additional report based solely on the January 18 interview. The record does not establish whether the psychologist made notes at the January 18 interview or preserved a record of that interview in any other form. If materials from the January 18 interview exist, they were not provided to the defendant. In addition, the defendant was not provided with any materials relating to the therapy sessions attended by the child and the psychologist after January 24, 1992. It is these two groups of materials to which the defendant asserts he was wrongfully denied access in pretrial discovery proceedings.

## III.

■ We first address whether any notes taken by the psychologist during her initial interview with the child and her mother, held on January 18, 1992, should have been disclosed to the defendant. We hold that this issue has not been appropriately preserved for appellate review and that in any event the record does not indicate that the defendant was prejudiced by the inability to review any such notes.

■ Communications between a psychologist and a client in the course of professional employment are statutorily privileged. This privilege is delineated in section 13–90–107, which provides in relevant part as follows:

(1) There are particular relations in which it is the policy of the law to encourage confidence and to preserve it inviolate; therefore, a person shall not be examined as a witness in the following cases:

. . . .

(g) A licensed psychologist[4] shall not be examined without the consent of his client

---

3. The statute recognizing the privilege refers to the parties as "psychologist" and "client," although the privilege is often referred to as the psychologist-patient privilege. *See, e.g., Dill,* 904 P.2d at 1371.

4. The defendant asserts for the first time in this court that the privilege does not apply because the psychologist was not licensed. The evidence indicated that she has a doctorate in counseling psychology, pursued a post doctoral fellowship at

as to any communication made by the client to him or his advice given thereon in the course of professional employment. . . .

§ 13–90–107(1)(g), 6A C.R.S. (1987).

■ A psychologist, however, "who has reasonable cause to know or suspect that a child has been subjected to abuse or neglect . . . shall immediately report or cause a report to be made of such fact to the county department [of social services] or local law enforcement agency." §§ 19–3–304(1), –304(2)(p), 8B C.R.S. (1996 Supp.). Section 19–3–311 provides that the psychologist-client privilege does not apply to any communication that is the basis for a report under section 19–3–304, 8B C.R.S. (1996 Supp.). Section 19–3–311 states:

(1) The incident of privileged communication between patient and physician, between patient and registered professional nurse, or between any person licensed pursuant to article 43 of title 12, C.R.S., or certified school psychologist and client, which is the basis for a report pursuant to section 19–3–304, shall not be a ground for excluding evidence in any judicial proceeding resulting from a report pursuant to this part 3. In addition, privileged communication shall not apply to any discussion of any future misconduct or of any other past misconduct which could be the basis for any other report under section 19–3–304.

§ 19–3–311(1), 8B C.R.S. (1996 Supp.).

In the present case, the psychologist testified that the purpose of the January 18 and January 24 interviews was for a therapeutic evaluation of the child. The psychologist explained that such an evaluation addresses whether the child was sexually abused, if so by whom, and how the child has dealt with the experience. The psychologist relied upon both the January 18 and January 24 interviews in preparing a written psychological report, which was provided to law enforcement authorities. The report included the child's statements describing the sexual assault and identifying the defendant as the perpetrator. At trial, the psychologist testified that her opinion, expressed in her report and in her testimony, that the child suffered from post traumatic stress disorder was based upon the two initial meetings with the child. Under these circumstances, we conclude that any psychologist-client privilege that may otherwise have been applicable with respect to the communications between the child and the psychologist during the January 18 and January 24 meetings was abrogated under section 19–3–311.

■ The evidence is clear that the only report made by the psychologist was the one dated February 24, 1992, based on the interviews of January 18 and 24 of that year. The prosecution provided the defense with copies of that report and a partial transcript of the January 24 interview. The prosecution also offered the defense access to the audiotape of the January 24 interview at a motions hearing prior to trial. The only materials from the initial interviews not provided to the defense were any notes taken by the psychologist at the January 18 interview. The defendant asserts that any such notes should have been provided to him under Crim. P. 16. However, notwithstanding opportunities to inquire into the existence of such notes at pretrial motions hearings, defense counsel did not seek such information, and the record does not disclose whether the psychologist made such notes. Under these circumstances, the defendant has not properly preserved this issue for review. *See Moses v. Diocese of Colo.*, 863 P.2d 310, 319 n. 10 (Colo.1993) (with few exceptions, issues not properly preserved in the trial court may not be asserted on appeal), *cert. denied,* ––– U.S. ––––, 114 S.Ct. 2153, 128 L.Ed.2d 880 (1994); *Denver Decorators, Inc. v. Twin Teepee Lodge, Inc.*, 163 Colo. 343, 348, 431 P.2d 8, 10 (1967) (" 'As a general rule, in order to preserve for review an objection to the exclusion of evidence, a *pertinent and proper question must be asked* . . . .' ") (emphasis added) (quoting 4 C.J.S. *Appeal and Error* § 291).

the C. Henry Kempe Center at the University of Colorado Medical Center, Department of Pediatrics, interned for a year at the Adams County Mental Health Center, was qualified by the court as an expert in the field of child psychology, and

had testified as an expert in that field on approximately fifty prior occasions. Because this issue was not raised in the trial court, we decline to address it.

Moreover, the record does not suggest that the defendant was prejudiced by lack of access to any notes from the January 18 interview. The psychologist testified that the sexual assault at issue was discussed only in a very general way at the first meeting. She testified that the meeting was used to develop rapport with the child and to put her at ease. The psychologist prepared a report based on both interviews, and this report was provided to the defense. Under these ·circumstances, and particularly in view of the prosecutor's obligation under Crim. P. 16 to provide such notes in the prosecution's·possession,[5] and the absence of any indication that this obligation was not satisfied, we do not believe that reversal is required to provide the defendant yet another opportunity to inquire whether such notes exist. *Cf. People v. Alonzi*, 40 Colo.App. 507, 511–12, 580 P.2d 1263, 1267 (1978) (denial of motion for judgment of acquittal sustained where undercover agent had destroyed notes of initial telephone conversation with defendant but prosecution provided defendant with tape recordings of six subsequent conversations between the agent and the defendant, as well as a report based on all the conversations), *aff'd*, 198 Colo. 160, 597 P.2d 560 (1979).

For the foregoing reasons, we hold that reversal is not required to provide the defendant another opportunity to inquire into the existence of the psychologist's notes from the January 18 meeting with the child.

## IV.

We next address whether notes taken by the psychologist during therapy sessions with the child subsequent to the January 24, 1992, interview should have been provided to the defense. We hold that such disclosure was not required.

The psychologist's testimony makes clear that her February 24, 1992, written report was based solely on the January 18 and January 24 evaluation sessions. Thereafter,

the psychologist met with the child periodically to provide therapy to assist the child in coming to terms with the sexual assault. The child's communications with the psychologist during those sessions were subject to the psychologist-client privilege under section 13–90–107(1)(g). The defendant, however, contends that the trial court erroneously denied· discovery of any notes made by the psychologist during those sessions. The defendant argues that the privilege was abrogated, and predicates that contention on three bases: (1) construction of section 19–3–311 to effect a waiver of the psychologist-client privilege, (2) actual waiver of the privilege by the child, and (3) a constitutional right to discovery that overrides the privilege. We address these arguments in the order listed.

## A.

We are not persuaded that section 19–3–311 should be construed to abrogate the privilege for communications between the psychologist and the child during the therapy sessions following the psychologist's report of child abuse under section 19–3–304.· The psychologist satisfied her obligation to report child abuse in this case by providing her written report to the local law enforcement agency. *See* § 19–3–304, 8B C.R.S. (1996 Supp.). The report was based solely on the January 18 and January 24 interviews. Only those interviews, therefore, provided an "incident of privileged communication"[6] that "is the basis for a report pursuant to section 19–3–304," and were therefore not protected by the psychologist-client privilege from use in evidence in the defendant's trial. *See* § 19–3–311(1), 8B C.R.S. (1996 Supp.).

The defendant, however, argues that section 19–3–311 totally abrogates the psychologist-client privilege if a psychologist makes a section 19–3–304 report that leads to legal proceedings. He predicates that proposed construction on the final sentence of section 19–3–311, which negates the privilege as to

---

**5.** *See* Crim. P. 16(a)(1)(III), 16(a)(2); *People v. Diefenderfer*, 784 P.2d 741, 753 (Colo.1989) ("[T]he prosecutor is obligated to give [the defendant] ... reports, statements, etc., of experts it intends to use.")

**6.** We assume for purposes of discussion that the psychologist-client privilege would have applied to the communication but for § 19–3–311. We need not resolve that issue for the purposes of this opinion.

"any discussion of any future misconduct or of any other past misconduct which could be the basis for any other report under section 19–3–304." § 19–3–311(1), 8B C.R.S. (1996 Supp.). "[O]ther past misconduct which could be the basis for any other report under section 19–3–304," however, plainly relates to misconduct other than that which was the basis for the "report pursuant to section 19–3–304" first referred to in section 19–3–311. In construing a statute, we must give effect to the intent of the General Assembly. *Farmers Group, Inc. v. Williams*, 805 P.2d 419, 422 (Colo.1991). "[W]e must choose a construction that serves the purpose of the legislative scheme, and must not strain to give language other than its plain meaning, unless the result is absurd." *Id.* (quoting *Colorado Dep't of Social Servs. v. Board of Comm'rs*, 697 P.2d 1, 18 (Colo.1985)). Applying these principles we construe section 19–3–311 to abrogate the psychologist-client privilege for only those communications upon which a report required by section 19–3–304 is based. Later communications between the psychologist and the client relating to the same incident that occasioned the earlier report are not subject to statutory waiver of the privilege under section 19–3–311. *Cf. People v. District Court*, 743 P.2d 432, 435 (Colo.1987) (a statute eliminating the physician-patient and husband-wife privileges in prosecutions for sexual offenses did not eliminate other statutory privileges because "[i]f the General Assembly had intended [the statute] to eliminate all statutory privileges ... it could have used the broad language required to express that intent.") (internal citation omitted).

■ Our construction of section 19–3–311 is bolstered by the strong public policy that we have recognized promoting psychotherapy for sexual assault victims. *See People v. District Court*, 719 P.2d 722, 726–27 (Colo. 1986) ("[T]he purpose of the statutory psychologist-patient privilege is to aid in the effective diagnosis and treatment of mental illness by encouraging the patient to fully disclose information to the psychologist without fear of embarrassment or humiliation caused by disclosure of such confidential information."). For that reason, prior to enactment of section 19–3–311 we stated that "the *only* basis for authorizing a disclosure of the confidential information is an express or an implied waiver." *Id.* at 727 (quoting *Clark v. District Court*, 668 P.2d 3, 9 (Colo. 1983)).

The legislative declaration for the Child Protection Act of 1987, §§ 19–3–301 to –316, 8B C.R.S. (1996 Supp.), of which section 19–3–311 is a part, provides further support for our construction of section 19–3–311. The legislative declaration provides that in adopting that act, "it is the intent of the general assembly to protect the best interests of the children of this state and to offer protective services in order to prevent any further harm to a child suffering from abuse." § 19–3–302, 8B C.R.S. (1996 Supp.). In view of the fact that the psychologist-client privilege is also designed to encourage a patient to seek counseling with the assurance that all communications will be kept confidential, *see People v. District Court*, 719 P.2d at 726, a conclusion that section 19–3–311 negates the psychologist-client privilege for post-report therapeutic communication would be inconsistent with the legislature's intent to shield a child victim from further harm. We therefore agree with the court of appeals that "the victim's psychologist-patient privilege afforded to her by § 13–90–107(1)(g) was not abrogated by statute with respect to ongoing treatment," and that the trial court did not err in denying discovery of the psychologist's notes with respect to ongoing treatment sessions with the child. *Dill*, 904 P.2d at 1371.[7]

**B.**

■ The defendant argues that the child impliedly waived the psychologist-client privilege for all purposes by permitting the

7. A psychologist may have an obligation to make a further report under section 19–3–311 should the psychologist obtain in the course of therapy information about the assault materially at variance with the psychologist's report under that section. In this case there is no suggestion of such a situation, for the child's trial testimony was consistent in all material respects with the information she provided to the psychologist in the January 18 and January 24, 1992, evaluation sessions.

psychologist to testify at trial about the diagnosis that the child suffered from post-traumatic stress disorder and by turning over to the defense the psychologist's written report, and notes from the January 24 evaluation session. These acts, according to the defendant, constituted an injection of the child's mental condition into the case and hence waived any claim of psychologist-client privilege. *Cf. Clark,* 668 P.2d at 10 (injection of a privilege-holder's mental condition into proceedings as a basis of a claim or affirmative defense waives the privilege with respect to communications with professionals concerning such condition). We disagree.

The record is clear that the psychologist based her opinion concerning post-traumatic stress disorder solely on the January 18 and January 24, 1992, evaluation sessions. Communications in those sessions and notes and reports based on such communications were not privileged by reason of the statutory abrogation of the privilege by section 19–3–311. *See supra* at 1320–21. Therefore, the use of these materials by the prosecution did not require any waiver, express or implied, by the child.[8]

### C.

■ We next address the issue of whether the United States Supreme Court's decision in *Pennsylvania v. Ritchie,* 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987), requires that we reexamine our holding in *People v. District Court,* 719 P.2d 722 (1986), concerning a defendant's right of access to a victim's post-assault psychotherapy records. In that case we held that

> where ... the victim has not waived the [psychologist-client] privilege afforded her by section 13–90–107(1)(g), the defendant is not entitled to examine the victim's post-assault psychotherapy records or to have the trial court review such records *in cam-*

*era* on the basis that the records might possibly reveal statements of fact that differ from the anticipated testimony of the victim at trial.

*People v. District Court,* 719 P.2d at 727. We rejected the defendant's argument that some access to the victim's therapy records was required under the Confrontation Clauses of the United States and Colorado constitutions. *Id.* at 726–27. Noting Colorado's strong public policy interest in encouraging sexual assault victims to obtain psychotherapy, we stated that absent waiver or a "particularized factual showing ... that access to the privileged communications of the victim is necessary for the effective exercise of [the] right of confrontation," it is error even for the trial court to review such communications *in camera. Id.* at 727.

A year after we decided *People v. District Court,* the United States Supreme Court issued its decision in *Ritchie.* In that case, Ritchie was charged with various sexual offenses against his thirteen-year-old daughter. *Ritchie,* 480 U.S. at 43, 107 S.Ct. at 994. During pretrial discovery, Ritchie sought access to the file of a Pennsylvania agency ("CYS"), which had investigated the charges and other reports of alleged abuse. *Id.* The agency refused to turn over the file, arguing that the information contained therein was privileged under a Pennsylvania statute. *Id.*

At the outset of its opinion, the Supreme Court rejected Ritchie's argument that his lack of access to the file would interfere with his right effectively to cross-examine his daughter under the Confrontation Clause of the Sixth Amendment. *Id.* at 51–54, 107 S.Ct. at 998–1000. The Court stated, much as we had stated in *People v. District Court,* that the Confrontation Clause only guarantees an opportunity for effective cross-examination, not access to every possible source of information relevant to cross-examination. *Id.* at 53–54, 107 S.Ct. at 999–1000.

---

8. The court of appeals stated that only the holder of a privilege can waive it and, implicitly, that the child did not waive the privilege because it was the prosecution, not the child, that accomplished the acts that injected the child's mental condition into the case. *See Dill,* 904 P.2d at 1371. This overlooks the possibility of implied waiver in circumstances where the holder of the privilege, by words or conduct, consents to the disclosure of the privileged information. *See People v. District Court,* 719 P.2d at 725. We need not explore the issue of implied waiver, for here the acts relied on by the defendant to effect waiver related to the use of unprivileged material, which did not require the child's consent.

Although the Court found no Sixth Amendment Confrontation Clause violation, it held that Ritchie's due process right to a fair trial required that the CYS file be subject to the trial court's in camera review.[9] *Id.* at 60, 107 S.Ct. at 1002–03. In reaching this decision, the Court noted that "[i]t is well settled that the government has the obligation to turn over evidence in its possession that is both favorable to the accused and material to guilt or punishment." *Id.* at 57, 107 S.Ct. at 1001 (citing *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963)). " 'Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.' " *Ritchie* 480 U.S. at 57, 107 S.Ct. at 1001 (quoting *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 3383–84, 87 L.Ed.2d 481 (1985) (opinion of Blackmun, J.) and citing *id.* at 685, 105 S.Ct. at 3385 (White, J., concurring in part and concurring in the judgment)).

The Court then observed that there is a strong public interest in protecting the type of sensitive information to be found in the CYS records, but noted that the Pennsylvania legislature itself had provided that such information is to be disclosed in certain circumstances, including when CYS is directed by court order to do so. *Ritchie,* 480 U.S. at 58, 107 S.Ct. at 1001–02. The Court concluded that under Pennsylvania law, "[i]n the absence of any apparent state policy to the contrary, we therefore have no reason to believe that relevant information would not be disclosed when a court of competent jurisdiction determines that the information is 'material' to the defense of the accused." *Id.*

The Court, however, disagreed with the Pennsylvania Supreme Court's holding that defense counsel must be allowed to examine all of the confidential information, both relevant and irrelevant, and present arguments

in favor of disclosure. *Id.* at 59, 107 S.Ct. at 1002. The Court noted that where the defendant makes only a general request for exculpatory material under *Brady,* "it is the State that decides which information must be disclosed. Unless defense counsel becomes aware that other exculpatory evidence was withheld and brings it to the court's attention, the prosecutor's decision on disclosure is final." *Id.* (footnote omitted). The Court therefore held that the defendant's interest and that of the state "in ensuring a fair trial can be protected fully by requiring that the CYS files be submitted only to the trial court for *in camera* review." *Id.* at 60, 107 S.Ct. at 1003. That procedure, the Court determined, is required to avoid unnecessarily sacrificing the state's "compelling interest" in protecting its child-abuse information and to prevent "a seriously adverse effect on Pennsylvania's efforts to uncover and treat abuse." *Id.* Such an effect might well result if a child does not "have a state-designated person to whom he may turn ... with the assurance of confidentiality," or if relatives and neighbors who suspect abuse are not offered confidentiality in presenting their information. *Id.* at 60–61, 107 S.Ct. at 1002–03.

We are persuaded that the present case is distinguishable from *Ritchie* in certain critical respects. First, the information in question is not provided to a state agency. It is provided by the child to a treating psychologist for the purpose of treating the consequences of abuse. We have recognized that "the purpose of the statutory psychologist-patient privilege is to aid in the effective diagnosis and treatment of mental illness by encouraging the patient to fully disclose information to the psychologist without fear of embarrassment or humiliation caused by disclosure of such confidential information" and that "it is of paramount importance to assure a victim of a sexual assault that all records of any treatment will remain confidential unless otherwise directed by the victim." *People v. District Court,* 719 P.2d at 726–27. We have

---

9. The Court elected not to analyze Ritchie's claim under the Compulsory Process Clause framework because the Fourteenth Amendment Due Process Clause established "a clear framework for review," and the Compulsory Process Clause "provides no *greater* protections in this area than those afforded by due process." *Ritchie,* 480 U.S. at 56, 107 S.Ct. at 1001.

observed as well that "[t]he knowledge that the alleged assailant would be entitled to discover these otherwise privileged documents could hamper a victim's treatment progress because of her unwillingness to be completely frank and open with the psychotherapist." *Id.* at 727. In sum, the information in question is not collected by the state, is disclosed only to a psychologist, and requires a higher level of confidentiality in order to achieve the open communication upon which successful therapeutic treatment depends.

Second, the legislative exception to the confidentiality provided by the psychologist-client privilege is relatively narrow. As earlier explained, *supra* at 1320–22, under section 19–3–311 the privilege does not extend to communications that provide the basis for a statutorily required report of child abuse under section 19–3–304. But, as we have construed the statute, *see supra* at 1320–21, this partial abrogation of the privilege does not extend to communications concerning the same incident of child abuse that occasioned the earlier report. If additional incidents of abuse are disclosed in communications between a psychologist and child during treatment, section 19–3–311 may require that the psychologist report such additional incidents, and the communications that generated such reports would not be privileged. *See* § 19–3–311(1), 8B C.R.S. (1996 Supp.). This partial abrogation of the privilege represents a legislative judgment that the importance of discovering and addressing child abuse justifies this limited intrusion on confidentiality.

In *Ritchie*, however, the statute included as one of the exceptions to confidentiality circumstances in which CYS was directed by court order to disclose information in its file. 480 U.S. at 57–58, 107 S.Ct. at 1001–02. Such an exception suggested the necessity for judicial inspection and evaluation of the contents of the CYS file to identify material information. *See id.* at 58, 107 S.Ct. at 1001–02. The exception to confidentiality created by section 19–3–311 is much narrower. It necessarily depends on the psychologist to report child abuse and does not contemplate judicial review of all the psychologist's notes to determine whether such report is required.[10] Accordingly, we are not persuaded that *Ritchie* requires an *in camera* inspection of a psychologist's notes of post-report therapeutic sessions with the child to ascertain whether information material to the defense might have been disclosed by the child.[11]

The facts of this case reinforce our conclusion that an *in camera* inspection of the psychologist's notes is not required here. The child's testimony at trial was consistent in all material respects with her statements to the psychologist in the January 24 interview. Although her account of the assault has varied somewhat in the degree of detail that she provided to the various witnesses who testified as to her pretrial statements, she has never suggested doubt about the fact of the assault, its location and circumstances, or the identity of the assailant. The defendant asserts nothing more than a desire to conduct a fishing expedition in the hope of discovering material exculpatory information that he has no reason to believe will be found. As we said in *People v. District Court* in assessing the right to examine such records for the purpose of effective cross-examination:

> At the hearing below, the defendant argued that because the victim might have

---

**10.** Section 19–3–304(1) provides that it is the reasonable suspicion of the psychologist (or other person listed under section 19–3–304(2)) which precipitates the requirement of a child abuse report. If the psychologist makes no such report, the psychologist-client privilege remains intact and no judicial inspection of a psychologist's notes is statutorily authorized.

**11.** A construction of § 19–3–311 that allows judicial inspection of psychotherapy notes even where no child abuse report has been filed, aside from taxing judicial resources, would undermine the purposes of both the psychologist-client privi-lege and the Child Protection Act of 1987. A patient who has visited a psychologist for counseling would simply have no assurance that communications will not later be subject to examination. *See e.g., People v. Foggy,* 121 Ill.2d 337, 118 Ill.Dec. 18, 24, 521 N.E.2d 86, 92 (1988) (allowing a trial judge access to all counseling records of a sexual assault victim "would seriously undermine the valuable, beneficial services of those [rape crisis counseling] programs that are within the protection of the statute."), *cert. denied, Foggy v. Illinois,* 486 U.S. 1047, 108 S.Ct. 2044, 100 L.Ed.2d 628 (1988).

told her therapist a different version of the events relating to the sexual assault than had been disclosed to police officials, access to the therapy records was necessary for full cross-examination of the victim. The vague assertion that the victim may have made statements to her therapist that might possibly differ from the victim's anticipated trial testimony does not provide a sufficient basis to justify ignoring the victim's right to rely upon her statutory privilege. In view of the strong policy embodied in the statute [recognizing the psychologist-client privilege], the limitation it imposes on the scope of cross-examination is justified.

719 P.2d at 726.[12] We concluded in *People v. District Court* by reemphasizing that:

> There is a strong public policy interest in encouraging victims of sexual assaults to obtain meaningful psychotherapy. The defendant's constitutional right to confrontation is not so pervasive as to to [sic] place sexual assault victims in the untenable position of requiring them to choose whether to testify against an assailant or retain the statutory right of confidentiality in post-assault psychotherapy records.

*Id.* at 727.

We therefore reject the argument that *Ritchie* entitled the defendant to require the court to conduct an *in camera* examination of the notes of the psychologist taken during post-report therapy sessions with the child in a search for information relevant to the defense.

## V.

For the foregoing reasons, we affirm the judgment of the Colorado Court of Appeals.

---

12. Other jurisdictions have also required, post-*Ritchie*, that in order to overcome a therapist-client privilege, a defendant must make more than vague assertions that counseling sessions might contain communications with impeachment value. *See Foggy*, 118 Ill.Dec. at 23–24, 521 N.E.2d at 91–92 (in view of the strong policy in favor of confidentiality and the fact that the defendant had access to an "array" of unprivileged statements made by the witness, a general request for *in camera* inspection of counseling records was insufficient); *Goldsmith v. State*, 337 Md. 112, 651 A.2d 866, 876 (1995) ("[I]n assessing a defendant's right to privileged records, the required showing must be more than the fact that the records 'may contain evidence useful for impeachment on cross-examination. This need might exist in every case involving an accusation of criminal sexual conduct.'") (quoting *People v. Stanaway*, 446 Mich. 643, 521 N.W.2d 557, 576 (1994), *cert. denied, Michigan v. Caruso*, —— U.S. ——, 115 S.Ct. 923, 130 L.Ed.2d 802 (1995)).