The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

David Arthur WITTREIN,
Defendant–Appellant.

No. 04CA2118.

Colorado Court of Appeals,
Division II.

May 1, 2008.

Rehearing Denied June 26, 2008.

John W. Suthers, Attorney General, Jennifer M. Smith, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Alan Kratz, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Justice ROVIRA.*

Defendant, David Arthur Wittrein, appeals from the judgment of conviction entered on a jury verdict finding him guilty of sexual assault on a child by one in a position of trust as part of a pattern of abuse, and one count each of sexual assault on a child by one in a position of trust, enticement of a child, sexual assault on a child, and indecent exposure. We reverse and remand for a new trial.

## I.

Defendant argues that the trial court erred in conducting the competency hearing of the victim in the presence of the jury. He contends this procedure prejudiced him by influencing the jury's credibility determination of the victim and permitted the admission of irrelevant evidence. We agree.

Before trial, the prosecution requested that the victim's competency hearing be held in the presence of the jury. Defense counsel objected, arguing, "[T]he minute you put the witness on the witness stand in front of the jury, it then becomes evidence in the case, and if the witness is incompetent, then we are in a bad situation."

The court agreed with the prosecution. It relied on its preliminary finding that the videotape of the child demonstrated that she was able to describe the events of her abuse in age-appropriate language, and on § 13–90–106(1)(b)(II), C.R.S.2007 (providing that in a criminal proceeding for sexual abuse, a child witness is competent if able to describe or relate in language appropriate for a child of that age the events or facts respecting which the child is examined).

At trial, the court permitted the prosecution to ask the child, in the presence of the jury, her age, birthday, and grade, the location of her school, and her favorite class. She also stated that she understood the difference between the truth and a lie. The court then dismissed the jury, ruled that the child was competent, and had the jury brought back into the courtroom for her testimony.

Section 13–90–106, C.R.S.2007, does not specify whether a competency hearing must be held outside of the jury's presence. Pursuant to CRE 104(c), "[h]earings on the admissibility of confessions shall in all cases be conducted out of the hearing of the jury," and "[h]earings on other preliminary matters shall be so conducted when the interests of justice require." Whether justice requires that a child competency hearing be conducted outside of the jury's presence is a matter of first impression in Colorado.

Defendant urges us to require competency hearings be conducted outside the presence of the jury based on the presumption that the defendant will always be prejudiced by the jury's observing the competency hearing of a child witness.

In *Commonwealth v. Washington*, 554 Pa. 559, 722 A.2d 643 (1998), the Pennsylvania Supreme Court was faced with the issue of whether a competency hearing should be conducted in the absence of the jury as a matter of first impression. It observed that it is well established that a trial judge must

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24–51–1105, C.R.S.2007.

not indicate to the jury his view on whether witnesses are telling the truth and that he is the one person to whom the jury looks for guidance and from whom the litigants expect absolute impartiality. In holding that the better practice is to excuse the jury because it avoids the potential for prejudice and ensures fairness, the court created a per se rule that competency hearings be conducted in the absence of a jury.

Other jurisdictions have reached the same conclusion. *See Commonwealth v. Tatisos*, 238 Mass. 322, 130 N.E. 495 (1921); *State v. Tandy*, 401 S.W.2d 409 (Mo.1966); *Cross v. Commonwealth*, 192 Va. 249, 64 S.E.2d 727 (1951).

We conclude that holding a competency hearing in the jury's presence is error when there is objection by defense counsel since it avoids the potential for prejudice and ensures fairness. Where credibility is the central issue, the impact of conducting the competency proceedings in the presence of the jury cannot be diminished. Because here the competency hearing was held in the jury's presence, defendant's convictions must be set aside, and he is entitled to a new trial.

## II.

Because the issue may arise on retrial, we consider defendant's contention that the testimony of two medical experts included assertions that the child (KH) was being truthful and were inadmissible. We disagree as to the first expert and agree in part as to the second.

Under CRE 702, expert testimony is admissible if it presents reliable, "specialized knowledge [which] will assist the trier of fact to understand the evidence or to determine a fact in issue." *See Lanari v. People*, 827 P.2d 495 (Colo.1992). But an expert may not testify regarding the credibility of the victim. *See People v. Fasy*, 829 P.2d 1314, 1318–19 (Colo.1992); *People v. Gaffney*, 769 P.2d 1081 (Colo.1989).

Here, Dr. Moon, an expert in pediatric emergency medicine, was asked, "Based on your experience and the allegations that [KH] made about what happened to her, was the genital exam consistent or inconsistent with her statements?" The witness replied, "I think it was consistent." When asked why she thought the testimony was consistent, Dr. Moon stated:

> [Y]ou don't always find tears or lacerations or bruising, particularly if it's been done on a much more chronic basis. And the fact that all of this historical information was volunteered with such incredible detail, with minimal prompting, if any, other than asking her a few specific questions for details, the history in and of itself is extremely supportive of abuse.

The prosecution also asked Dr. Stern, an expert in child psychiatry, "What was your opinion based on your professional experience of what [KH's reporting] meant in this case?" Dr. Stern replied, "[G]iven the extensive information that she provided and the consistency of that information … and the emotional expression she demonstrated, my clinical opinion, which is quite firm, is that the finding in this girl at this time related to the degree to which she was traumatized." During cross-examination she was asked whether hyper-reporting could be a measure of someone who is interested in portraying himself or herself as a victim. Dr. Stern replied, "I think in general that's true. It's hard for me to imagine that an eight-year-old child would be able to put together such a plan." Defense counsel also asked Dr. Stern, "You don't know necessarily whether what [KH] has stated was true, correct, because it's not your job?" She replied, "Well, yeah. I mean I have to agree that I don't have 100 percent certainty since I wasn't there."

The appropriate test is not whether opinion testimony embraces an ultimate issue to be decided by the jury but whether or not the expert's testimony, if believed, will help the jury to understand the evidence or to determine a fact in issue. *People v. Aldrich*, 849 P.2d 821, 829 (Colo.App.1992). The experts in this case were asked whether the statements KH made were consistent with medical diagnoses. It logically follows that KH's statements could have been consistent with sexual abuse even if the experts did not believe she was telling the truth. We decline to find that "consistency" is synonymous with

"sincerity" or "truth." Because the experts did not give their subjective opinion as to whether KH was truthful or sincere, these statements were properly admitted.

■ However, Dr. Stern did testify that she could not imagine a child of KH's age fabricating a story like hers. We agree this statement was improper because it was an opinion that the child was telling the truth on the specific occasion that she reported being assaulted by defendant.

■ In *People v. Eppens*, 979 P.2d 14 (Colo.1999), the Colorado Supreme Court declined to find plain error in admission of expert testimony that a child's statements were sincere. The expert in *Eppens* did not purport to have any special skill in determining the sincerity of a child. Similarly, Dr. Stern did not testify that she had special skill in determining KH's truthfulness. Also, like the *Eppens* expert, Dr. Stern admitted that it was not her job to determine KH's truthfulness and that she could not be certain whether KH was telling the truth.

Here the child's credibility was the central issue to be resolved by the jury in determining whether the sexual assaults occurred. KH testified against defendant. We find that Dr. Moon's statement was proper and that Dr. Stern's statement was improper.

We conclude that Dr. Stern's statement, along with other factors, undermined the fundamental fairness of the trial. Given the record here we cannot say that the admission of this testimony was harmless error. Accordingly, on retrial, such testimony should not be admitted.

### III.

Defendant next argues that the trial court erred by refusing to conduct an in camera review of the child's school records and therapy records from Aurora Mental Health. We perceive no abuse of discretion.

The acts alleged to have been committed by defendant occurred between March 2000 and March 2003. Defendant filed a subpoena duces tecum for discovery of the child's school records and the mental health records related to her out-patient treatment for post-traumatic stress disorder. The prosecution objected to both subpoenas, and the trial court declined to conduct an in camera review of the records.

Whether evidence is admissible is a determination within the discretion of the trial court, and absent an abuse of that discretion, that determination will not be disturbed by a reviewing court. *People v. Ibarra*, 849 P.2d 33 (Colo.1993).

### A. School Records

Section 22–1–123(3), C.R.S.2007, provides that a student's school records may not be released without the written consent of the parent or the legal guardian of the student except as permitted in 20 U.S.C. § 1232g(b), which does not allow the release of education records without written parental consent, unless an exception applies. Under 20 U.S.C. § 1232g(b)(1)(J)(ii) of the Family Education and Privacy Rights Act, an exception to the parental consent requirement exists for a release of records pursuant to a "subpoena issued for a law enforcement purpose." We conclude that the trial court properly rejected this argument. *See People v. Bachofer*, 192 P.3d 454, 460 (Colo.App. 2008).

We do not agree with the trial court's conclusion that disclosure of the child's records was barred by the federal statute pertaining to students' records. The federal statute prohibits a practice or policy of disclosure of educational records except in designated instances, and expressly recognizes that disclosure may be made in compliance with a judicial order or pursuant to any lawfully issued subpoena if "parents and the students are notified." 20 U.S.C. § 1232g(b)(2)(B); *see State v. Birdsall*, 116 Ariz. 196, 568 P.2d 1094, 1097 (App.1977). Thus we conclude that the court's reliance upon the federal statute is misplaced.

■■ However, when deciding whether to allow discovery of a child's confidential school records, a trial court should weigh the confidentiality interests of the child and parents against the defendant's need for the requested information. *See Bachofer*, 192 P.3d at 461. Here, the record does not reflect that defendant provided any basis for his asser-

tion that the school records may contain evidence supporting his theory that the child had fabricated her abuse allegations. *See id.* Accordingly, the trial court did not abuse its discretion in denying in camera review of the child's school records.

### B. Aurora Mental Health Records

In *People v. Kyle,* 111 P.3d 491 (Colo.App. 2004), a case involving sexual assault on a child, the defendant asserted that the trial court had erred because it had not conducted an in camera review of medical records. The *Kyle* division disagreed with the defendant's contention, stating: "[E]ven if we assume the court should have conducted such a review, our own in camera review reveals any error was harmless beyond a reasonable doubt." *Id.* at 503.

We have conducted our own in camera review and find nothing that would have changed the outcome of defendant's trial.

The remaining issues defendant raises are unlikely to recur on retrial. Therefore we decline to address them.

The judgment of conviction is reversed, and the case is remanded for a new trial.

Judge CASEBOLT and Judge ROMÁN concur.