**The PEOPLE of the State of Colorado,**
**Petitioner/Cross–Respondent**

v.

**David Arthur WITTREIN,**
**Respondent/Cross–**
**Petitioner.**

**No. 08SC588.**

Supreme Court of Colorado,
En Banc.

Dec. 14, 2009.

Rehearing Denied Jan. 11, 2010.*

* Justice Martinez and Justice Bender would grant  the Petition.

John W. Suthers, Attorney General, Katharine J. Gillespie, Assistant Attorney General, Denver, Colorado, Attorneys for Petitioner/Cross–Respondent.

Douglas K. Wilson, Colorado State Public Defender, Alan Kratz, Deputy Colorado State Public Defender, Denver, Colorado, Attorneys for Respondent/Cross–Petitioner.

Justice RICE delivered the Opinion of the Court.

## I. Introduction

The People appeal the decision of the court of appeals in *People v. Wittrein*, 198 P.3d 1237 (Colo.App.2008), reversing the defendant's convictions and remanding the case to the trial court for a new trial. We reverse and remand the case to the court of appeals for consideration of the defendant's other arguments raised, but not yet resolved, in his original appeal.

The defendant, David Arthur Wittrein, was charged and convicted of nineteen counts of sexual assault on a child by one in a position of trust as part of a pattern of abuse, and one count each of sexual assault on a child by one in a position of trust, enticement of a child, sexual assault on a child, and indecent exposure. The court of appeals reversed Wittrein's convictions, holding that the trial court erred in conducting a competency proceeding for the child victim, K.H., in front of the jury, and in admitting certain expert

testimony purportedly offering an opinion on K.H.'s truthfulness. The court of appeals also affirmed the trial court's refusal to conduct an in camera review of K.H.'s mental health records, basing this determination on its own in camera review. Finally, the court of appeals held that the trial court should have conducted a balancing test to determine whether K.H.'s education records could be reviewed in camera but that Wittrein had not established a sufficient need for the information at trial and, therefore, the error was harmless.

The People now appeal the decision of the court of appeals, arguing that the trial court properly conducted the competency proceeding in front of the jury and that the challenged expert testimony was admissible. Wittrein cross-appeals, arguing that the court of appeals applied an incorrect standard when it reviewed K.H.'s mental health records in camera. Wittrein also renews his argument that the trial court should have conducted an in camera review of K.H.'s education records.

These issues present distinct problems, and for that reason we will address each issue individually. First, we hold that it was not reversible error for the trial court to conduct K.H.'s competency proceeding in front of the jury but that by far the better practice is to hold child competency proceedings outside the jury's presence. Second, we find that the challenged expert testimony on cross-examination was inadmissible but that the error was invited by defense counsel. Third, we hold that K.H. did not waive her psychologist-patient privilege with regard to her mental health records; therefore the trial court and the court of appeals were precluded from reviewing them in camera. Finally, we hold that, contrary to the trial court's position, education records may be reviewed in camera if the defendant shows a need for the information that outweighs any privacy interests. Here, however, K.H.'s education records did not relate to any evidence presented at trial; thus the trial court's refusal to review them in camera was harmless. Accordingly, we remand the case to the court of appeals to consider Wittrein's additional appellate arguments not yet addressed by that court.

## II. Competency Proceeding

■ Wittrein argues that the trial court erred in conducting K.H.'s competency proceeding in front of the jury. We disagree. K.H. was nine years old at the time of the trial. Under Colorado law, the trial court must determine whether a witness under ten is competent to testify. § 13–90–106(1)(b)(II), C.R.S. (2009). This requires a court finding that the child witness is "able to describe or relate in language appropriate for a child of that age the events or facts respecting which the child is examined." *Id.* Whether a child is competent to testify is addressed to the trial court's discretion. *See Harris v. People,* 174 Colo. 483, 490, 484 P.2d 1223, 1226 (1971).

Prior to trial, Wittrein objected to holding K.H.'s competency proceeding in front of the jury, and he renewed this objection at trial. The trial court held that it was permissible for K.H.'s competency questioning to be held in front of the jury but elected to excuse the jury during the judge's ruling that K.H. was competent to testify. During the competency questioning, the prosecutor first asked K.H. her name and age, then questioned her about school, her teacher, and her favorite subjects. The prosecutor then asked:

Q: Do you understand the difference between telling the truth and telling a lie?

A: Yes.

Q: Is it a good thing or bad thing to tell the truth?

A: It's a good thing.

Q: If I were to tell you that my shirt was green, would that be the truth or would that be a lie?

A: A lie.

Q: Do you understand that the judge is going to ask you to take an oath in this courtroom to tell the truth?

A: No.

Q: Did you know that?

A: No.

Q: If he asks you to take an oath to tell the truth in this courtroom, what does that mean?

A: I don't know.

Q: If he asks you to tell the truth, do you know what that means?

A: Yes.

Q: And will you be able to tell the truth in this courtroom?

A: Yes.

■ On appeal, Wittrein argued that the questioning resulted in prejudice and was an error that required reversal of his convictions. He believed that conducting K.H.'s competency proceeding in front of the jury was impermissible bolstering and that the jury confused a finding of competency with the judge's endorsement of K.H.'s credibility. The court of appeals agreed and apparently adopted a per se rule that child competency proceedings can never be held in front of a jury.[1] We disagree with the court of appeals and hold that there is no per se rule against conducting child competency proceedings in front of the jury, but by far the better practice is to excuse the jury.

Although some preliminary matters are required by rule to be conducted outside the presence of the jury, the competency of a child witness is not one of them. *See* CRE 104. Instead, the competency of a child witness falls under the blanket rule that preliminary matters should be conducted outside the presence of the jury when "the interests of justice require." CRE 104(c).

■ No prior Colorado case has addressed whether "the interests of justice" require child competency proceedings to be conducted outside of the jury's presence; thus this is a question of first impression for this court. Although we agree with several other jurisdictions that by far the better practice is to hold child competency proceedings outside the presence of the jury,[2] thereby minimizing the danger of unfair prejudice resulting from the child's responses to the competency questions, this does not mean that the interests of justice dictate that such questioning may never be held with the jury present. If the trial court decides to hold a child competency proceeding in the presence of the jury, then it bears the risk that the defendant will be prejudiced to a degree that requires reversal on appeal. Furthermore, if competency questioning is conducted in front of the jury, then a limiting instruction is most likely necessary to minimize jury confusion.[3]

The court of appeals cited to cases from other jurisdictions to support its per se rule, but only one was in accord with the court of appeals' holding. In *Commonwealth v. Washington,* the Pennsylvania Supreme Court adopted a per se rule for child competency hearings. 554 Pa. 559, 722 A.2d 643, 647 (1998). But even the Pennsylvania court noted that it was going "a step further than [its] sister jurisdictions" in creating a per se rule, and we have found no other jurisdiction that has a similarly stringent rule. *Id.* The other cases cited by the court of appeals simply do not support a per se rule. *See Commonwealth v. Tatisos,* 238 Mass. 322, 130 N.E. 495, 498 (1921) (holding that there

---

1. The court of appeals never states that it is a per se rule as such, but the relevant portion of its opinion reads:

> We conclude that holding a competency hearing in the jury's presence is error when there is objection by defense counsel since it avoids the potential for prejudice and ensures fairness.... Because here the competency hearing was held in the jury's presence, defendant's convictions must be set aside, and he is entitled to a new trial.

*Wittrein,* 198 P.3d at 1239.

2. Many other jurisdictions have declined to adopt a per se rule against holding child competency proceedings in front of the jury. *See, e.g., Collier v. State,* 30 Wis.2d 101, 140 N.W.2d 252, 255 (1966) (holding it is not error to conduct the

competency proceeding with the jury present, particularly where a jury instruction clarified that admission of evidence did not constitute imprimatur of the judge); *In re AHB,* 491 A.2d 490, 492 (D.C.1985) (holding that a trial court can conduct voir dire in or outside of the jury's presence at its discretion); *State v. Harris,* No. 87–CA–10, 1988 WL 38034, at *3 (Ohio App. 5 Dist. Mar.31, 1988) (holding that the better practice is to excuse the jury, but it is not plain error for the jury to be present if appropriate instructions are given).

3. Though the wording of a limiting instruction is within the trial court's discretion, the instruction should inform the jury that competency is a legal question for the court but that the jury makes the ultimate determination on credibility.

was no error when a child was examined for competency outside the presence of the jury); *State v. Tandy,* 401 S.W.2d 409, 413 (Mo. 1966) (not adopting a per se rule, but holding that the better practice is for competency proceedings to be conducted outside the jury's presence); *Cross v. Commonwealth,* 192 Va. 249, 64 S.E.2d 727, 730 (1951) (approving of a competency hearing that was held outside the jury's presence but without discussing whether the hearing could have been conducted otherwise). Therefore, we do not find these cases to be helpful or instructive for our determination today.

■ In this case, even though the better approach would have been to hold K.H.'s competency proceeding without the jury present, any prejudice to Wittrein does not rise to the level of reversible error. The prosecutor asked K.H. simple questions that directly related to her ability to be truthful and to relate facts to the jury. The jury was not told the purpose of the testimony and was excused before the trial judge ruled on K.H.'s competency. Therefore, we find Wittrein's claims of prejudice to be unwarranted based on the limited questioning that occurred.

Accordingly, we reject a per se rule for conducting child competency hearings outside the presence of the jury and find that Wittrein was not prejudiced to a degree requiring reversal of his convictions.

### III. Expert Testimony

At trial, the People presented a child psychiatrist, Dr. Harriet Stern, to testify as an expert witness regarding K.H.'s reports of abuse and about the results of K.H.'s psychiatric tests. Dr. Stern testified that K.H.'s "scale for hyper-reporting" was "highly elevated." She explained that a high scale for hyper-reporting can be the result of fabrication or severe trauma. On cross-examination, defense counsel questioned Dr. Stern about whether an elevated scale for hyper-reporting "could be a measure of someone who is interested in portraying themselves as a victim." To this, Dr. Stern replied: "I think in general that's true. It's hard for me to imagine that an eight-year-old child would be able to put together such a plan." De-

fense counsel did not object to Dr. Stern's response.

■ In Colorado, neither lay nor expert witnesses may give opinion testimony that another witness was telling the truth on a specific occasion. CRE 608(a); *People v. Eppens,* 979 P.2d 14, 17 (Colo.1999). Our prior cases have established the general parameters of this rule. In *Eppens,* we held that a social worker impermissibly testified that the child victim's report of a sexual assault was "sincere." 979 P.2d at 17. Similarly, in *People v. Gaffney,* we held that it was impermissible for an expert to testify that a child victim was "very believable." 769 P.2d 1081, 1088 (Colo.1989). In *People v. Oliver,* we held that a social worker and an investigator could not testify that they personally believed the victim's statements. 745 P.2d 222, 225 (Colo.1987). Finally, in *People v. Snook,* we held that it was impermissible for a social worker to testify that children tend not to fabricate stories of sexual abuse. 745 P.2d 647, 649 (Colo.1987). From these cases, it is clear that experts may not offer their direct opinion on a child victim's truthfulness or their opinion on whether children tend to fabricate sexual abuse allegations.

■ The court of appeals held that Dr. Stern's testimony on cross-examination constituted improper opinion testimony that K.H. was telling the truth on a specific occasion. We agree with the court of appeals on this point. Defense counsel questioned Dr. Stern regarding whether "someone" was portraying "themselves" as a victim, and she testified that "[i]t's hard for me to imagine that an eight-year-old child would be able to put together such a plan." The court of appeals interpreted this to mean that Dr. Stern "could not imagine a child of K.H.'s age fabricating a story like hers." *Wittrein,* 198 P.3d at 1240. But this is a misstatement of her testimony. Dr. Stern did not say that a child K.H.'s age could not make up sexual abuse allegations generally. Rather, Dr. Stern stated that an eight-year-old child is unlikely to hyper-report sexual abuse allegations for the specific purpose of being seen as a victim.

Even a correct statement of Dr. Stern's response, however, reveals that it was impermissible under our case law. Dr. Stern's response was very similar to a statement that we held impermissible in *Snook*. In *Snook*, a social worker testified about the psychological capacity of children in general. 745 P.2d at 648. On direct examination, she stated that "[g]eneral attitudes, accepted attitudes as far as the literature concerning children is that children tend not to fabricate stories of sexual abuse...." *Id.* We found that testimony to be impermissible, holding it was tantamount to the social worker testifying that the child victim was telling the truth about her allegations. Here, Dr. Stern made a similar generalization about whether children have the sophistication to fabricate allegations of sexual abuse in order to be seen as a victim. We find no significant difference between these two statements and, therefore, find the admission of such testimony to be error.

■■■ Even though Dr. Stern's response was impermissible, we hold that the error was invited by defense counsel's questioning. Under our invited error doctrine, "a party may not complain on appeal of an error that he has invited or injected into the case; he must abide the consequences of his acts." *People v. Zapata,* 779 P.2d 1307, 1309 (Colo. 1989). Although we recognize that the doctrine is narrow and applies to errors in trial strategy but not errors that result from oversight, we believe the doctrine applies in this case. *See id.* Defense counsel questioned Dr. Stern regarding hyper-reporting and whether it could suggest that someone was "interested in portraying [themself] as a victim." She responded by giving a generalized answer, then her opinion on whether that was a possible explanation in this case. Dr. Stern's responses were a foreseeable result of the form of questioning; this was not a simple oversight but an error in strategy. *See People v. Shackelford,* 182 Colo. 48, 50, 511 P.2d 19, 20 (1973) (holding that it was invited error for defense counsel to ask open-ended questions on cross-examination that resulted in an undesirable response; thus an appellate court was precluded from considering whether the defendant was prejudiced by the testimony). Therefore, we find that any error in Dr. Stern's cross-examination response was invited by the defense counsel's questioning.

■■■ Even if the error was not strategic but instead the result of oversight, we conclude that it was not plain error requiring reversal. *See People v. Stewart,* 55 P.3d 107, 119 (Colo.2002). Wittrein did not object to Dr. Stern's response. Therefore, we review the admission of Dr. Stern's testimony for plain error. *See Eppens,* 979 P.2d at 18. "In order to rise to the level of plain error, an error must have so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction." *Id.* We do not believe that Dr. Stern's response on cross-examination undermined the fundamental fairness of the trial, and it certainly does not cast doubt on the reliability of the judgment. Dr. Stern's response did not concern a substantive issue at trial. Wittrein never suggested, apart from these questions to Dr. Stern, that K.H. was portraying herself as a victim. Moreover, unlike in *Snook,* Dr. Stern later testified on cross-examination that she did not know with "one hundred percent certainty" that K.H. was telling the truth. Therefore the jury could not interpret her testimony as an opinion that K.H. was telling the truth, and her response did not affect the fairness of the trial.

## IV. In Camera Review of Education Records and Medical Records

Wittrein argues that the court of appeals incorrectly affirmed the trial court's decision to quash his subpoena duces tecum in which he sought discovery of K.H.'s mental health records and education records. Wittrein argues that these records should have been reviewed in camera by the trial court. Because the mental health records and education records involve different considerations, we will address them separately.

### A. Mental Health Records

■ Wittrein argues on appeal that the trial court incorrectly determined K.H.'s records from Aurora Mental Health ("AMH") were protected by the psychologist-patient

privilege, and that the court of appeals applied the wrong legal standard when it conducted its own in camera review of the records. We hold that the psychologist-patient privilege was not waived as to the AMH records, and that the court of appeals' in camera review was unnecessary because the records were privileged. Therefore, the standard it used to review the records is irrelevant.

■■■■■■ The psychologist-patient privilege assures "a victim of a sexual assault that all records of any treatment will remain confidential unless otherwise directed by the victim." *People v. Sisneros*, 55 P.3d 797, 800 (Colo.2002) (quoting *People v. Dist. Ct.*, 719 P.2d 722, 726–27 (Colo.1986)). The "privilege protects testimonial disclosures as well as pretrial discovery of files or records derived or created in the course of the treatment." *Id.* These records, however, are subject to waiver of the privilege. An "evidentiary showing of waiver is required before the trial court may order the documents produced for an in camera review." *Id.* As we stated in *Sisneros*, "[t]o determine whether there was a waiver, the proper inquiry is not whether the information sought may be relevant.... Instead, the proper inquiry is whether the victim has injected her physical or mental condition into the case as the basis of a claim or an affirmative defense." 55 P.3d at 801. To establish a waiver, the defendant must show "that the privilege holder, by words or conduct has expressly or impliedly forsaken his claim of confidentiality with respect to the information in question." *Clark v. Dist. Ct.*, 668 P.2d 3, 8 (Colo.1983).

When K.H. alleged that Wittrein had sexually abused her, she was taken to Children's Hospital in Denver for physical and mental examination. Children's Hospital provided in-patient therapy and diagnosed K.H. with post-traumatic stress disorder ("PTSD"). K.H. was later admitted to AMH for ongoing mental therapy. At trial, Wittrein filed a subpoena duces tecum to obtain discovery of mental health records relating to K.H.'s outpatient treatment at AMH. Wittrein argued that the prosecution had put K.H.'s mental state at issue when it stated its intention to introduce a diagnosis of PTSD from Children's Hospital and therefore waived any privilege to the AMH records as well. Wittrein further argued that, even if the AMH records were privileged, the trial court should have conducted an in camera review for potentially exculpatory evidence. The People conceded that K.H. had waived her privilege with regard to the Children's Hospital records but argued that the records held by AMH relating to K.H.'s ongoing therapy were distinct, requiring a separate waiver. After a hearing, the trial court determined that K.H. waived her privilege with respect to the records from Children's Hospital but not to the records from AMH.[4] Thus the trial court held that the privilege prevented it from reviewing, in camera or otherwise, K.H.'s AMH records.

■■■ The court of appeals upheld the trial court's decision to quash the subpoena but based its decision on its own in camera review instead of the psychologist-patient privilege.[5] *Wittrein*, 198 P.3d at 1241. The court of appeals determined that nothing in the mental health records "would have changed the outcome of the defendant's trial." *Id.* Wittrein now argues that the court of appeals applied the wrong standard when reviewing the records.

We agree with the trial court and hold that K.H. did not waive the psychologist-patient privilege, either expressly or impliedly, as to the records from AMH. The trial court correctly drew a line between K.H.'s records from Children's Hospital and her records from AMH, holding that the two sets of records were distinct and required separate waivers to be admissible. K.H. expressly

---

4. The trial court appointed a guardian ad litem to represent K.H.'s interest in her mental health records. The guardian ad litem determined that it was not in K.H.'s best interest to waive her privilege as to the AMH records.

5. We note that in other cases the court of appeals has conducted its own in camera review to re-

solve similar issues. *See, e.g., People v. Kyle*, 111 P.3d 491, 503 (Colo.App.2004). In camera review should be the province of the trial judge and not appellate courts. Therefore, absent exceptional circumstances, cases normally should be remanded to the trial court for an in camera review.

waived her privilege to the Children's Hospital records relating to her treatment and PTSD diagnosis.[6] There was no such waiver, however, for the AMH records because K.H. never placed the substance of her ongoing AMH treatment sessions at issue. Therefore, the psychologist-patient privilege precluded the trial court from conducting an in camera review of K.H.'s AMH records. To hold otherwise would undermine the necessary trust involved in a psychologist-patient relationship. *See Sisneros,* 55 P.3d at 802 ("The possibility that documents relating to treatment may later be obtained in discovery decreases the likelihood that a victim will seek treatment, let alone be willing to reveal intimate details during treatment."); *see also People v. Bachofer,* 192 P.3d 454, 461 (Colo. App.2008) (holding that a privilege to medical records was not waived; therefore the records were not discoverable); *Clark,* 668 P.2d at 9 (holding that the privilege holder did not place his mental condition at issue because he did not assert his mental problems as the basis for a claim or defense). Because we hold that K.H. did not waive her psychologist-patient privilege, we decline to determine whether the court of appeals reviewed K.H.'s mental health records under the correct standard.[7]

The trial court correctly determined that the psychologist-patient privilege forecloses an in camera review of K.H.'s mental health records. Even if the court of appeals used an incorrect legal standard during its in camera review, such error is irrelevant because the records should not have been subject to review.

6. Both the People and Wittrein acknowledge that K.H.'s mother expressly waived all privileges related to the Children's Hospital records.

7. Wittrein argues that the trial court is required to review the AMH records to determine if they contain information that is material to his defense. The privilege, however, may not yield to Wittrein's bare request for the records, hoping that they may contain exculpatory information. *See Dill v. People,* 927 P.2d 1315, 1324 (Colo. 1996) ("[W]e are not persuaded that [*Pennsylvania v. Ritchie,* 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987)] requires an in camera inspection of a psychologist's notes of post-report therapeutic sessions with the child to ascertain whether information material to the defense

## B. Education Records

■ Because Wittrein believed that declining school performance, and not abuse, may have caused K.H.'s PTSD, he sought an in camera review of K.H.'s education records. In addition, Wittrein believed that the education records might actually contradict the finding of PTSD if the dates of K.H.'s decline in school performance did not correlate with the dates of her alleged abuse. The trial court held that if the People introduced any evidence as to K.H.'s school performance, the door would be open and the education records would be disclosed. However, the trial court ultimately refused discovery of the education records, and it also declined to review them in camera because it determined, incorrectly, that federal law prohibited their disclosure. The court of appeals disagreed with the trial court's analysis, holding that the federal law contained exceptions to Colorado's statutory prohibition on the release of school records without written parental consent. The court of appeals then held that "a trial court should weigh the confidentiality interests of the child and parents against the defendant's need for the requested information." *Wittrein,* 198 P.3d at 1240. However, the court of appeals concluded that Wittrein had not sufficiently established a need for the information; therefore the trial court's error was harmless. *Id.* We agree with the court of appeals that a balancing test is appropriate but we do not rest our determination on Wittrein's insufficient proffer.

Discovery of K.H.'s school records involves the interplay of state and federal law. Under section 22-1-123(3), C.R.S. (2009), "[a]

might have been disclosed by the child."); *People v. Tauer,* 847 P.2d 259, 261 (Colo.App.1993) ("Indeed, even when the defendant raises a constitutional right to confrontation, a balancing test between the patient's and the defendant's rights is inappropriate.... In all cases, a victim's post-assault psychotherapy records are privileged and, absent waiver, a defendant may not compel their discovery."); *People v. Dist. Court,* 719 P.2d at 726 ("The vague assertion that the victim may have made statements to her therapist that might possibly differ from the victim's anticipated trial testimony does not provide a sufficient basis to justify ignoring the victim's right to rely upon her statutory privilege.").

school district shall not release the education records of a student to any person, agency, or organization without the prior written consent of the parent or legal guardian of the student except as otherwise permitted in [the Family Educational Rights and Privacy Act ("FERPA")]." Under FERPA, an exception to the parental consent requirement exists for release of records "in compliance with judicial order, or pursuant to any lawfully issued subpoena" if the students or parents have been notified. 20 U.S.C. § 1232g(b)(2)(B) (2006). Thus, the federal statute does not altogether prohibit disclosure of education records but instead requires parental notification and a judicial order or subpoena.

■ Prior to the issuance of a judicial order or subpoena, the defendant must articulate, in good faith, a specific need for the information contained in the records. *See Bachofer,* 192 P.3d at 461. The trial court must then balance the defendant's need for the information with the privacy interests of the student and her parents. *Id.* A non-exclusive list of factors the court should consider includes: "(1) the nature of the information sought, (2) the relationship between this information and the issue in dispute, and (3) the harm that may result from disclosure." *Id.* (citing *Zaal v. State,* 326 Md. 54, 602 A.2d 1247, 1261–62 (1992)). If the trial court determines that the defendant's need outweighs any privacy interests, then it should review the records in camera. The trial court, in its discretion, may then order disclosure of the records. *Id.* (holding that a defendant may obtain school records upon a proper showing of need and that the trial court's decision will be reviewed under an abuse of discretion standard).

■ Here, Wittrein made no proffer of need directly related to the education records.[8] However, even though the proffer was deficient, we cannot ignore the constitutional issue implicated in the nondisclosure of

K.H.'s education records. Under *Brady v. Maryland,* the prosecution must disclose any information that is materially favorable to the defendant. 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). "The court should also disclose inculpatory information that will be of material assistance in preparing the defense." *Bachofer,* 192 P.3d at 461.

We do not believe that, under the circumstances of this case, *Brady* or its progeny required K.H.'s education records to be reviewed for exculpatory information. K.H.'s education records related only tangentially to her diagnosis and treatment for sexual abuse, and academic performance is only one among many factors that are considered in a PTSD diagnosis. Moreover, the prosecution never relied on the education records at trial. Had the prosecution relied on them, the trial court's pre-trial ruling would have required disclosure or, at the very least, an in camera review. Based on the facts of this case and the relationship of the education records to the evidence, we hold that it was not reversible error for the trial court to decline an in camera review of these records.

## V. Conclusion

We remand the case to the court of appeals for proceedings consistent with this opinion and for resolution of Wittrein's other arguments that were not addressed by that court in his original appeal.

Justice MARTINEZ concurs, and Justice BENDER joins the concurrence.

Justice MARTINEZ, concurring in judgment only:

I write separately in this case because I disagree with the majority's analysis of three of the issues in the opinion. First, the majority calls it the "better practice" to conduct child competency proceedings outside of the presence of the jury, but then inconsistently

---

**8.** Wittrein argues that the proffer came from an earlier request that the prosecution turn over any material or exculpatory information concerning statements of prosecution witnesses and "any and all records, or information, revealing prior misconduct or bad acts attributed to any prosecution witness." We recognize that this proffer lacks the specificity that a trial court should require before disclosing education records. But we are also aware of the unique facts of this case, in that the trial court imposed a flat prohibition on in camera review based on an erroneous interpretation of federal law.

considers whether there was prejudice. I would simply find it is error to conduct competency proceedings in front of the jury, but in this case the error was harmless. Second, I disagree that defense counsel invited error by asking a prosecution witness an "open-ended" question on cross-examination. After finding invited error, the majority nevertheless addresses plain error. I would apply the plain error standard to determine reversal is not required because the error was neither invited nor preserved. Finally, I do not agree that this case presents an issue of implied waiver. Rather, the primary issue raised by the defense is that due process rights trump the privileges associated with a victim's mental health records. Unlike the majority, I would directly address this issue, but I ultimately arrive at the same result as the majority.

### I. Competency Proceeding

The majority holds that "there is no per se rule against conducting child competency proceedings in front of the jury, but by far the better practice is to excuse the jury [during competency proceedings]." Maj. op. at 1080. The majority then goes on to hold that because prejudice did not occur as a result of conducting the competency hearing in front of the jury, Wittrein was "not prejudiced to a degree requiring reversal of his convictions." Maj. op. at 1081.

By stating that it is merely "better practice" to hold competency proceedings outside of the presence of the jury, the majority seems to suggest that conducting competency proceedings in front of the jury is not error. However, by then proceeding to discuss whether Wittrein was prejudiced as a result of the trial court's decision to allow the jury to hear the competency proceeding, the majority seemingly indicates that it was error, but did not rise to the level of reversible error. To the extent that the majority is stating that conducting competency proceedings in front of the jury constitutes error, but that such error was harmless in this case, I agree.

C.R.E. 104(a) states "preliminary questions concerning the qualification of a person to be a witness ... shall be determined by the court...." Subsection (c) states that hearings on preliminary matters "shall" be conducted outside the presence of the jury "when the interests of justice require." Although this court has not previously discussed whether "the interests of justice require" child competency proceedings to be conducted outside the presence of the jury, it is well established that the competency of a child witness is a preliminary matter addressed to the trial court's discretion. *See, e.g., Harris v. People,* 174 Colo. 483, 490, 484 P.2d 1223, 1226 (1971); *Wesner v. People,* 126 Colo. 400, 403, 250 P.2d 124, 126 (1952).

Accordingly, as with other preliminary matters, child competency hearings are properly conducted by the trial court outside the presence of the jury. *See Vasquez v. People,* 173 P.3d 1099, 1105 (Colo.2007) (forfeiture of confrontation rights is a "preliminary question going to the admissibility of evidence" and should therefore be conducted outside the presence of the jury); *People v. Reynolds,* 195 Colo. 386, 389, 578 P.2d 647, 649 (1978) (preliminary question of admissibility of privileged information properly determined outside the presence of jury). Therefore, the trial court's decision to hold the competency hearing in the jury's presence was error. However, I agree with the majority that Wittrein did not suffer prejudice as a result of the trial court's decision to hold the competency hearing in front of the jury, and Wittrein is therefore not entitled to a new trial on these grounds.

### II. Expert Testimony

The majority holds that Dr. Stern's testimony on cross-examination constituted improper opinion testimony that the child victim in this case was telling the truth on a specific occasion. Maj. op. at 1081–82. However, they find that the error was invited by defense counsel's questioning. Maj. op. at 1082. In contrast to the majority, I would not find that defense counsel's questioning constituted invited error.

The invited error doctrine is narrow and applies only to errors in trial strategy, not errors that result from oversight. *People v. Zapata,* 779 P.2d 1307, 1309 (Colo.1989). Here, defense counsel's strategy in cross-

examination of Dr. Stern was to elicit an alternative, non-inculpatory explanation for hyper-reporting. In fact, Dr. Stern actually provided a specific answer that was responsive to defense counsel's question. In response to the question of whether an elevated scale for hyper-reporting "could be a measure of someone who is interested in portraying themselves as a victim," Dr. Stern stated, "I think in general that's true." However, she continued, adding, "It's hard for me to imagine that an eight-year-old child would be able to put together such a plan." The first sentence of Dr. Stern's answer was responsive to defense counsel's question, and, in fact, completely answered the question asked—that is, that one possible reason for hyper-reporting other than sexual victimization could be a desire to be seen as a victim. However, Dr. Stern's additional statement that she did not believe that an eight-year-old child would hyper-report in order to be seen as a victim volunteered more than was asked, and nothing even remotely suggests defense counsel intended to elicit such a response.

The question posed to Dr. Stern was open-ended and poorly framed for use in cross-examination. It could have been asked in a way that would not have allowed for Dr. Stern's expansive answer. However, I do not believe that it is correct to suggest that it was defense counsel's trial strategy to ask such a question. Instead, a poorly phrased question is better seen as error resulting from oversight. Therefore, I believe the invited error doctrine is inapplicable here.

After concluding that Dr. Stern's testimony was invited error, the majority goes on to apply a plain error test to determine if the error was so egregious as to require reversal. Maj. op. at 1082. If an error is invited, a reviewing court need not address plain error. *See People v. Stewart*, 55 P.3d 107, 120 (Colo. 2002); *Zapata*, 779 P.2d at 1309 (deciding not to address the merits of a plain error argument raised by a criminal defendant where defendant's theory of the case jury instruction was found to be invited error). Accordingly, if the majority views defense counsel's question as invited error, it is unnecessary to address plain error.

Because I would not find that defense counsel's questioning of Dr. Stern was invited error, I would simply apply a plain error analysis to determine if reversal is required. In this case, assuming that Dr. Stern's testimony constituted error, I do not believe it "so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction." *People v. Eppens*, 979 P.2d 14, 18 (Colo.1999). Accordingly, I agree with the majority in that Wittrein's conviction should not be reversed on these grounds, but I reach that conclusion without finding that defense counsel committed invited error.

### III. Medical Records

The majority focuses on whether there was an implied waiver as to the Aurora Mental Health ("AMH") records. *Id.* Quoting *People v. Sisneros*, 55 P.3d 797 (Colo.2002), the majority states that, to determine whether there was an implied waiver, the "proper inquiry is whether the victim has injected her physical or mental condition into the case as the basis of the claim or affirmative defense." Maj. op. at 1083. However, here, the victim did not even testify about her mental condition. Further, although both the People and Wittrein agree that K.H.'s mother expressly waived all privileges related to the Children's Hospital records, neither the waiver nor any circumstances about the waiver appear in the record. Thus, there is no basis from which to argue an implied waiver of the AMH records. Nonetheless, the majority discusses implied waiver and largely ignores the issue raised in this appeal.

Wittrein's primary argument regarding the AMH records is that his constitutional right to due process of law requires the trial court to conduct an in camera inspection of the AMH documents. In contrast to the majority, I would directly address the due process issue, but conclude that Wittrein has not made a sufficient showing to be entitled to an in camera review of the AMH records.

Generally, the due process clause grants defendants a right to disclosure of evidence that is material or favorable to the defense. However, unlike other evidentiary rules, privilege statutes shield potentially relevant

material from disclosure. Accordingly, in order to determine whether the due process clause requires disclosure of otherwise privileged information, courts must balance the policy considerations supporting statutory privileges against a defendant's due process rights.

In *Dill v. People,* this court was confronted with a situation similar to the present case. 927 P.2d 1315 (Colo.1996). There, a child reported sexual abuse and was taken to a psychologist to evaluate the child's report of the abuse. *Id.* at 1316. The meeting was tape-recorded, and the psychologist prepared a report based on the meeting. *Id.* The child subsequently continued therapeutic counseling with the psychologist. *Id.* at 1317. The tape-recording of the initial meeting and the report were made available to the prosecution and the defense, and the defense sought discovery of the psychologist's notes regarding the on-going therapy. *Id.*

In finding that the due process clause did not require an in camera review of the psychologist's notes, this court observed that the defendant did not show need for the records beyond a desire to engage in a "fishing expedition." *Id.* at 1324 (distinguishing *Pennsylvania v. Ritchie,* 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987), which held that the due process clause required an in camera inspection of state child abuse records). Thus, we left open the possibility that where a showing is made that access to privileged records is necessary, due process may require such access.

Accordingly, without eliminating the possibility that there may be times when the due process clause requires that the trial court conduct an in camera review of privileged records to determine whether they contain information that must be disclosed to the defense, in the absence of a particularized showing that the records contain exculpatory information not otherwise available to the defendant, in camera review is not required. Here, Wittrein did not make such a showing. Therefore, although the determination of whether privileged information must be reviewed in camera should be addressed on due process grounds, I reach the same ultimate result as the majority.

I am authorized to state that Justice BENDER joins in this concurrence.