18CA0482 Peo v Cejudo-Arredondo 10-07-2021 COLORADO COURT OF APPEALS Court of Appeals No. 18CA0482 El Paso County District Court No. 16CR6534 Honorable Marcus S. Henson, Judge The People of the State of Colorado, Plaintiff-Appellee, v. Ramon Cejudo-Arredondo, Defendant-Appellant. JUDGMENT AFFIRMED Division IV Opinion by JUDGE J. JONES Freyre and Tow, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced October 7, 2021 Philip J. Weiser, Attorney General, Ryan A. Crane, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee Megan A. Ring, Colorado State Public Defender, Chelsea E. Mowrer, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant 
1 ¶ 1 Defendant, Ramon Cejudo-Arredondo, appeals the judgment of conviction entered on jury verdicts finding him guilty of various charges of sexual assault on a child and sexual assault on a child (position of trust) and a number of sentence enhancers. We affirm. I. Background ¶ 2 Cejudo-Arredondo’s wife provided child care for a number of children, including the victims in this case, sisters L.V. and H.V. At the time, L.V. was eight years old and H.V. was six years old. ¶ 3 Shortly after L.V. and H.V.’s mother stopped taking her daughters to “Nana,” as she was known to the girls and their mother, L.V. and H.V. told their mother that Cejudo-Arredondo, whom they knew at “Tata,” had sexually abused them on many occasions while they were in his house and van. ¶ 4 The victims’ mother contacted law enforcement. A forensic interviewer, Deborah Paton, interviewed L.V., and a different forensic interviewer, Beth Kirk-Small, interviewed H.V. Following an investigation, the People charged Cejudo-Arredondo with numerous sex crimes. ¶ 5 Both victims testified at trial, as did the forensic interviewers, investigating officers, the victims’ mother, a forensic medical 
2 examiner, and a “cold” (or “generalized,” see People v. Cooper, 2021 CO 69, ¶ 1 n.1) expert in “victim-offender dynamics,” Gayle Christensen. Cejudo-Arredondo’s theory of defense was that L.V. and H.V. had made up their allegations because they didn’t want to be in day care. ¶ 6 A jury convicted Cejudo-Arredondo of most, but not all, of the charges. II. Discussion ¶ 7 Broadly stated, Cejudo-Arredondo makes two contentions on appeal: (1) certain testimony by the forensic interviewers and the cold expert impermissibly bolstered the victims’ credibility and (2) the prosecutor said things in opening statement and closing argument that ran afoul of various limitations on prosecutorial conduct. Cejudo-Arredondo also argues that even if none of the errors individually warrants reversal, they do cumulatively. We reject all of these contentions. A. Expert Testimony ¶ 8 A witness may not testify that another witness told the truth on a particular occasion. People v. Wittrein, 221 P.3d 1076, 1081 (Colo. 2009). This prohibition applies, of course, to cases involving 
3 alleged sexual assaults on children and to “both direct and indirect implications of a child’s truthfulness.” Venalonzo v. People, 2017 CO 9, ¶ 32. ¶ 9 With respect to expert testimony in such cases, Colorado appellate courts have distinguished between testimony about typical or at least not uncommon behavior of children claiming to have been sexually assaulted — which is permissible to educate jurors, particularly with respect to conduct that might seem counterintuitive — and testimony that, even by implication, conveys the expert’s opinion that the child was telling the truth about having been assaulted — which is impermissible. Compare People v. Fasy, 829 P.2d 1314, 1315-17 (Colo. 1992) (expert’s testimony that sexual assault can cause post-traumatic stress disorder and the child suffered from post-traumatic stress disorder was admissible), and People v. Short, 2018 COA 47, ¶¶ 13-20 (testimony of a cold expert who answered hypothetical questions matching the circumstances of the case was admissible), and People v. Rail, 2016 COA 24, ¶¶ 59-72 (cold expert’s testimony about certain behavior of child victims that matched circumstances of the case was admissible), and People v. Morrison, 985 P.2d 1, 3-5 (Colo. App. 
4 1999) (cold expert’s testimony about various aspects of sexual abuse and a hypothetical that matched the facts of the case was admissible), with Venalonzo, ¶¶ 35-36 (forensic interviewer’s testimony that the alleged victims’ behavior was common to that of other child assault victims she had interviewed and that some forensic interviews had led to the dropping of charges was inadmissible), and Wittrein, 221 P.3d at 1081-82 (expert’s testimony that an eight-year-old child is unlikely to hyper-report sexual abuse allegations for the purpose of being seen as a victim was inadmissible), and People v. Eppens, 979 P.2d 14, 16-19 (Colo. 1999) (expert’s testimony that child’s report of a sexual assault was “sincere” was inadmissible), and People v. Gaffney, 769 P.2d 1081, 1083, 1086-88 (Colo. 1989) (expert’s testimony that child’s description of events was “very believable” was inadmissible; distinguishing cases involving expert testimony that the victim behaved in a way typical of sexual assault victims), and People v. Snook, 745 P.2d 647, 648-69 (Colo. 1987) (social worker’s testimony that children tend not to fabricate stories of sexual abuse was inadmissible), and People in Interest of J.R., 2021 COA 81, ¶¶ 14-25 (doctor’s testimony that child had suffered sexual abuse was 
5 inadmissible), and People v. Relaford, 2016 COA 99, ¶¶ 18-34 (therapist’s testimony that children rarely lie about having been sexually abused by an adult, and that, in her experience, children lie about such things only in two particular circumstances was inadmissible). ¶ 10 Sometimes it is relatively easy to determine when an expert’s testimony about child sex assault crosses the line. Sometimes it isn’t. It may be particularly difficult to make that call when the testimony is by an expert who testifies as to both the typical (or perhaps not uncommon) behavior of children alleging sexual assault and how the victim in the case behaved. What is clear is that an expert’s testimony in this regard isn’t inadmissible merely because it inadvertently bolsters the child’s credibility. Relaford, ¶ 30. Nor is testimony that (1) victims typically behave in certain ways and (2) the alleged victim behaved consistently with such behavior necessarily inadmissible. Glasser, 293 P.3d at 78. And even more clearly, testimony about the typical behavior of child sex assault victims isn’t inadmissible merely because the alleged victim exhibited such typical behavior. Were the rule otherwise, testimony 
6 about typical victim behavior would never be admissible. That obviously isn’t the law. ¶ 11 In this case, Cejudo-Arredondo challenges various parts of Paton, Kirk-Small, and Christensen’s testimony, none of which his trial counsel objected to. We conclude that the district court didn’t abuse its discretion, see Venalonzo, ¶ 15, by admitting any of that testimony, for, as they pertain to the particular aspects of the challenged testimony, one or more of the following reasons. • Much of the challenged testimony was about the typical behavior of children whom the witnesses had interviewed. • The fact the victims displayed behavior typical of children claiming sexual assault, either in their interviews — which were shown to the jury — or their trial testimony, didn’t render the experts’ testimony inadmissible. • The experts spoke in terms of children whom they had interviewed, without characterizing them all as victims. • None of the experts said or implied that they believed L.V. or H.V. 
7 • Some of the testimony simply related what the experts — and therefore the jurors — saw in the video-recordings of the forensic interviews. That wasn’t expert opinion. • Some of the testimony was merely about the children’s responsiveness and demeanor during the interviews (for example, that L.V. was able to describe well how she felt during the alleged assaults). • Cejudo-Arredondo mischaracterizes or takes out of context some of the challenged testimony. ¶ 12 In sum, though there is a line that experts may not cross, we aren’t persuaded that any of the three experts crossed that line. Though their testimony may have incidentally buttressed L.V. and H.V.’s credibility, that isn’t enough for us to conclude that their testimony was inadmissible.
1 1 We also conclude that, given the murkiness of some of the case law on this question and the nature of the challenged testimony, there was no obvious error. See Hagos v. People, 2012 CO 63, ¶ 14 (plain error must be obvious). 
8 B. Prosecutor’s Statements ¶ 13 We assess a prosecutor’s alleged improper statements in two parts. First, we determine whether the statements were improper, taking into account the totality of the circumstances. Wend v. People, 235 P.3d 1089, 1096 (Colo. 2010). Second, if any statement was improper, we determine whether it warrants reversal, applying the appropriate standard of reversal. Id. In this case, because defense counsel didn’t object to any of the statements challenged on appeal, that standard is plain error. ¶ 14 Cejudo-Arredondo contends that during opening statement and closing argument, the prosecutor offered his personal opinions as to the evidence and Cejudo-Arredondo’s guilt, attempted to inflame the jurors’ passions against him, misstated and shifted the burden of proof, suggested knowledge of information not in evidence, and denigrated the defense. ¶ 15 We tend to agree with Cejudo-Arredondo’s argument that the prosecutor’s suggestion that L.V. and H.V. would continue to disclose additional details of the assault for “the rest of their li[ves]” was likely improper. As well, the prosecutor perhaps said something unsupported by the evidence when he said, “What 
9 [children are] really lacking is usually the ability to come up with some complex evil scheme and motive.” But aside from these two arguably improper remarks, we don’t see anything improper in the statements Cejudo-Arredondo challenges. With respect to the remainder of the challenged statements, Cejudo-Arredondo takes them out of context, they are comments based on evidence (and reasonable inferences therefrom) introduced at trial, Cejudo-
Arredondo mischaracterizes and twists them, and/or they are permissible rhetorical flourish. See People v. Maloy, 2020 COA 71, ¶ 61 (a prosecutor has wide latitude to argue based on facts in evidence and reasonable inferences drawn from those facts); People v. Allee, 77 P.3d 831, 837 (Colo. App. 2003) (within limits, a prosecutor may employ rhetorical devices and engage in oratorical embellishment and metaphorical nuance). ¶ 16 Assuming the two instances of improper statements were obvious, we aren’t persuaded that they so undermined the fundamental fairness of the trial as to cast serious doubt on the reliability of the convictions. Hagos v. People, 2012 CO 63, ¶ 14. The remarks were fleeting and the jury acquitted Cejudo-Arredondo 
10 of some counts, indicating that the jury wasn’t swayed to decide the charges on some improper basis. C. Cumulative Error ¶ 17 To reverse based on cumulative error, we would have to conclude that “the cumulative effect of [multiple] errors and defects substantially affected the fairness of the trial proceeding and the integrity of the fact-finding process.” Howard-Walker v. People, 2019 CO 69, ¶ 24. As discussed above, we don’t believe the two possibly improper remarks meet that standard. III. Conclusion ¶ 18 We affirm the judgment. JUDGE FREYRE and JUDGE TOW concur.